[PHILADELPHIA, APRIL 3d, 1837.]

## TAYLOR *against* SMITH.

### IN ERROR.

The plaintiff conveyed a tract of land to the defendant by deed, which contained the following clause : " Excepting, nevertheless, the aforesaid premises are subject to a lien or dowership thereon, in favour of E. T. during the term of her natural life, according to the form and effect of an act of assembly," &c.   On the same day the defendant signed an agreement by which he declared that he held himself bound to the plaintiff for the balance of the purchase-money, " of a certain tract of land purchased of him after paying off all the judgments and demands against the said estate." The land was afterwards sold by virtue of an execution upon a judgment against a former owner, and purchased at the sheriff's sale by the defendant.   *Held,* (1) that the clause in the deed did not control the agreement, and consequently that the defendant was entitled to deduct the amount of the dower of E. T. from the purchase-money ; (2) that the purchase-money ought to have been applied by the defendant to pay off the incumbrances in the first instance, and that it was error to charge the jury that unless the sale by the sheriff to the defendant was procured by fraud, he held by title paramount, and therefore that the consideration of the agreement had failed.

ERROR to the Court of Common Pleas of Chester county.

Sarah Taylor, administratrix of the goods, &c. of Ezra Taylor, deceased, brought an action of *assumpsit* in that court against John Smith, to which the defendant pleaded *non assumpsit, non assumpsit infra sex annos,* and a special plea of set-off.

(Taylor v. Smith.)

On the trial the plaintiff gave in evidence an instrument of writing signed by John Smith as follows: "I, John Smith, of the township of East-town, in the county of Chester, yeoman, do hold myself bound to Ezra Taylor, of the township of Upper Providence, in the county of Delaware, for the balance of money which are or may be due, if any, to the said Ezra Taylor, of the purchase-money of a certain tract of land purchased of him, after paying off all the judgments and demands against the said estate," dated October 13th, 1823. Also, a deed from the said Ezra Taylor and wife to the said John Smith, of the same date, conveying for the consideration of $2579 84, a plantation in Upper Providence aforesaid, containing sixty-five acres, one rood and ten perches of land, reciting that it was the remainder of one hundred and twenty acres adjudged to said Ezra Taylor under certain proceedings in partition, and which James Kelton, high 'sheriff, &c. conveyed to him by deed of September 8th, 1804. The deed from Taylor and wife to Smith, had this clause; " excepting, nevertheless, the aforesaid mentioned and described premises, or piece of land, is subject to a lien, or dowership thereon in favour of Elizabeth Taylor, now Twaddell, during the term of her natural life, according to the form and effect of an act of General Assembly of this commonwealth, reference being thereunto had may fully and at large appear." Elizabeth Twaddell was the widow of Enoch Taylor. Also, the deed above recited from James Kelton, conveying the said one hundred and twenty acres to Ezra Taylor, deceased, " subject nevertheless to a lien thereon in favour of the other parties in the said writ named, until payment be made of their shares of the valuation money according to act of assembly;" on which said deed are indorsed the receipts of the other parties in interest, (being the brothers and sisters of said Ezra Taylor) acknowledging to have received from said Ezra Taylor their full shares of the valuation of the said premises, excepting their shares of the widow's thirds after her death.

The plaintiff also gave in evidence some parol evidence showing the acts and declarations of the parties, Ezra Taylor and John Smith, after the execution of said agreement, and deed of October 13th, 1823, and then rested her case.

The *defendant* then gave in evidence, amongst other things, that part of the said one hundred and twenty acres were sold by the said Ezra Taylor to the directors of the poor, prior to the year 1821, and it was at that time agreed between the said Ezra and the said directors, that $511 50 should be the principal of the thirds payable to and amongst the heirs or parties in the partition, at the death of the said Elizabeth Twaddell, out of the land sold to Smith, the interest of which was payable to the said Elizabeth during her life, and was paid by the said Ezra up to near the time of the sale to

(Taylor *v.* Smith.)

Smith. Also, certain judicial proceedings whereby it appeared that the premises thus sold to Smith, had, subsequently to the sale to him, been sold by the sheriff of Delaware county, and purchased in by Smith, by virtue of an execution issued to collect a debt due to Nathan Heacock from Nathan Taylor, deceased, father of Enoch Taylor, which debt had been prosecuted to judgment, execution, levy and condemnation of the land in question prior to the sale from Taylor and wife to Smith. Also, the wills of Nathan Taylor, deceased, and of Enoch Taylor, deceased, showing amongst other things, the devise of the said one hundred and twenty acres by Nathan to Enoch, and the devise by Enoch of the one hundred and twenty acres and other lands to the parties in the said proceedings in partition. Also, the report of certain men appointed under the directions of the latter will to value the real estate of the said Enoch. Also, that the mortgage, judgments and demands against the said premises sold by Taylor and wife to Smith, including the said sum of $511 50, which the defendant paid or was bound to pay, amounted to more than the said consideration of $2579 84.

And after having given certain other evidence, the defendant closed his evidence also; and requested the court to charge the jury as follows:

1. "That by the terms of the agreement between Ezra Taylor and John Smith, dated October 13th, 1823, and on which this suit is founded, John Smith was only bound to account for any balance which might remain of the purchase-money after the payment of liens, including the sum due at the death of Elizabeth Twaddell, which was a " demand" against the land of Ezra Taylor.

2. That the contract of the parties, as evidenced by the said agreement, is not altered or controlled by the clause in the deed from Taylor to Smith, dated October 13th, 1823, the said clause subjecting the lands in the hands of Smith *only to* the payment of the yearly sum to Elizabeth Twaddell, as settled by the parties during her life time.

3. That the construction of the written agreements and covenants between the parties is matter of law and for the court, and in construing these agreements and covenants, *no attention is to* be paid to the subsequent acts and declarations of the parties or the interpretation they may have put upon them.

4. Under the evidence in this case Ezra Taylor was not entitled to receive any part of the sum of $511 50, remaining charged on the land at the death of Elizabeth Twaddell, and consequently the plaintiff is not entitled to recover any portion of the said sum of $511 50 in this action.

5. Even if any portion of the said sum of $511 50 be due to the estate of said Ezra Taylor, the plaintiff is not entitled to recover the same against the defendant in this action.

(Taylor v. Smith.)

6. Unless the sale made by the sheriff at the suit of Nathan Heacock was procured by fraud on the part of Smith, he held the land so sold by title paramount to the title of Ezra Taylor, and therefore the consideration for entering into said agreement having failed, the plaintiff is not entitled to recover against the defendant in this action, for any alleged breach of said agreement.

7. The plaintiff having failed to show any acknowledgment, not inconsistent with a promise to pay, by the defendant, of any definite claim of the plaintiff within six years before the commencement of this action, the statute of limitations, under the pleading in this case operates to bar the plaintiff from the recovery of any sum due under the said agreement of October 13th, 1823."

The court (DARLINGTON, President,) charged the jury on all the points (except the seventh) as requested by the defendant's counsel.

The jury having found for the defendant, the plaintiff removed the record by writ of error, and filed the following specifications.

1. " The court erred in charging the jury that by the terms of the agreement between Ezra Taylor and John Smith, dated October 13th, 1823, and on which this suit is founded, John Smith was only bound to account for any balance which might remain of the purchase-money after payment of liens, including the sum due at the death of Elizabeth Twaddell.

2. The court erred in charging the jury that the contract of the parties, as evidenced by the said agreement, is not altered or controlled by the clause in the deed from Taylor to Smith, dated October 13th, 1823, the said clause subjecting the lands in the hands of Smith only to the payment of the yearly sum to Elizabeth Twaddell, as settled by the parties during her life time.

3. The court erred in charging the jury that no attention was to be paid to the subsequent acts and declarations of the parties in the construction of the agreement or the interpretation they may have put upon them.

4. The court erred in charging the jury that under the evidence in this case, Ezra Taylor was not entitled to receive any part of the sum of $511 50, remaining charged on the land at the death of Elizabeth Twaddell, and consequently the plaintiff is not entitled to recover any portion of the sum of $511 50 in this action.

5. The court erred in charging the jury that unless the sale made by the sheriff at the suit of Nathan Heacock was procured by fraud on the part of Smith, he held the land so sold by title paramount to the title of Ezra Taylor, and therefore the consideration for entering into said agreement having failed, the plaintiff is not entitled to recover against the defendant in this action for any alleged breach of said agreement."

The case was argued by Mr. *Dick* and Mr. *Dillingham* for the

plaintiff in error; and by Mr. *Bell* and Mr. *Edwards* for the defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—The obvious intent of the original agreement was that the vendee should pay no more than the balance after payment of the incumbrances; or in the words of the parties, " all judgments and demands against the estate"—terms large enough to comprehend every thing that was a charge on it. How far, then, is their generality controlled by the clause in the conveyance: " excepting, nevertheless, the aforesaid mentioned and described premises or piece of land, is subject to a lien or dowership thereon, in favour of Elizabeth Taylor, now Twaddell, during the term of her natural life, according to the form and effect of an act of the General Assembly." It is difficult to conjecture what the parties meant by this. They may have intended to express that the land was sold subject to the widow's annuity, or even payment, to the other children, of the principal retained in the vendor's hands during her life. It is however not distinctly said that it was sold subject to any thing. The clause is in form a recital which may have been, and probably was intended to show that the parties were apprised of the fact, and that there was no design to covenant against it: or what is more probable still is, that it was introduced by the scrivener because there was a similar recital in the preceding link of the title. In this state of palpable obscurity, the meaning is to be taken most strongly against the grantor, who was the person to avoid an ambiguity by speaking out; and the clause is therefore entitled to no influence. Most certainly it never was intended that the vendee should discharge this incumbrance out of his own pocket, if there were purchase-money to answer it.

But the jury were directed that unless the subsequent sale to the defendant were procured by fraud, he held by title paramount; and that the consideration of the agreement having thus failed, the plaintiff could not recover on it. This superseded all inquiry as to the extent of the incumbrances. Such a construction, however, would put it in the vendee's power to get rid of the bargain by refusing to perform his own part of it. The obvious intent was that the purchase-money should be applied to the incumbrances in the first instance; and the jury, instead of being told that the defendant held paramount *unless* the sheriff's sale had been procured by fraud, should have been told that the very fact of suffering the property to be sold, was itself a fraud. The qualification thus introduced, instead of being a benefit to the plaintiff, was an injury, as it tended to mask the real nature of the transaction. At the least, it tended to perplex and mislead; and was, in that particular view, erroneous. It was out

(Taylor *v.* Smith.)

of the vendee's power to get rid of the bargain by any such contrivance.　Even had the purchase not been procured by fraud, there would be no reason why the defendant should be cut loose from his bargain, being placed in *statu quo* by a deduction from the purchase-money.　Before another jury, then, the inquiry will be whether the purchase-money has been exhausted by outstanding liens—and here it may be proper to say, that the vendor's share of the principal retained by him for the use of the widow, was extinguished in his hands, by the union in his person of the characters of debtor and creditor—and whatever residue there may be, if any, will be recovered.

　　　　　Judgment reversed, and a *venire de novo* awarded.