# Klaer *versus* Ridgway.

The rule that a deed or grant must be construed most strongly against the grantor, applies with especial force to a reservation or restriction in a deed, whereby there is a withholding of something from the grant.

April 1st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Pike county:* Of July Term 1877, No. 122.

Case by Jacob Klaer against Warren K. and George K. Ridgway, to recover damages for the diversion of water from a run, to the injury of the grist-mill of plaintiff. At the trial it appeared that, in 1866, John C. Mott was the owner of a tract of land at Milford, in Pike county, lying along the Sawkill creek, on which was erected a grist-mill and saw-mill, which were supplied with power by a small dam across the Sawkill on his land, which turned the water into a dug-race along the bank, from which a flume at the lower end carried water to the grist-mill, and farther up a flume led to the saw-mill. From the grist-mill flume water was taken to a spoke-factory.

On September 22d 1866, Mott, being the owner of the grist-mill and saw-mill, conveyed to Jacob Klaer a piece of this land, which

5 NORRIS—34

he had before leased to him for a spoke-factory, and on April 1st 1868, being still owner of all the rest of the property, conveyed to the plaintiff the grist-mill and five acres of land. The material portion of both these deeds, will be found set forth in the opinion of this court.

After the death of Mott, the defendants purchased of his executors the saw-mill, and also erected a dam above the one mentioned on the same tract, and when there was not sufficient water to run the grist-mill to its full capacity would draw off the water to their saw-mill and diminish the speed of the grist-mill and injure the grinding and business, at other times stopping the grist-mill entirely, and would close their dam and let down the water at their own pleasure. This greatly injured the plaintiff's business, and he brought this action to recover damages.

In addition to the foregoing evidence, it was proposed, on the part of the defence, to ask one of the defendants whether at the time of the building of the reservoir dam, the plaintiff was not there frequently looking on, and did not make suggestions, as to how it ought to be built, and whether he made any objections thereto ; and further, to ask one of defendants, if after the completion of the same, he made a proposition to plaintiff, that he, plaintiff, should have the right to draw the water whenever he was in particular need of it for present work, and that when defendants had urgent work on hand and plaintiff had not, the defendants should draw the water and have the preference.

The evidence, under both of these offers, the court, under objection, admitted and sealed exceptions.

Among the points presented by the plaintiff were the following, subjoined to which are the answers of the court.

1. That under the deed of John C. Mott to plaintiff of April 1st 1868, for the grist-mill property, he had a right to use for any purpose (except a saw-mill) as much water from the grist-mill flume as was required by the grist-mill to run it to its highest capacity at that time.

Ans. "Refused."

2. That he might take the water from the grist-mill flume at any point, and might use it at the spoke-mill, or for running any other machinery (except a saw-mill) that suited his business or convenience.

Ans. "Refused."

3. That under the deed of September 22d 1866, from John C. Mott to Jacob Klaer for the spoke-mill, Klaer had the right to use six-horse power of water from the grist-mill flume at any time, when there was sufficient for the grist-mill, without regard to the saw-mill.

Ans. "Refused."

4. That when plaintiff became the owner of the grist-mill and

[Klaer *v.* Ridgway.]

spoke-mill, he became entitled to use from the grist-mill flume, six-horse power of water more than was sufficient to run the grist-mill to its full capacity on the 1st of April 1868, and he might apply it all at the spoke-mill, or all at the grist-mill, or he might divide the water to suit his convenience and business.

Ans. "Refused."

7. That plaintiff had a right to change the flume to the dug-race to suit himself, provided he did not draw from the dug-race more water than he was entitled to under his two deeds.

Ans. "Refused."

8. That if the jury believe from the evidence that defendants had drawn water from the dug-race, and had thereby impeded and affected the running of the grist-mill, when plaintiff was not drawing from his flume more water than he was entitled to for any purpose, then plaintiff is entitled to recover.

Ans. "Plaintiff's eighth point is affirmed, with the qualification that plaintiff must not have been drawing more water than he was entitled to for his grist-mill."

In portions of the general charge, the court, Waller, P. J., said, "[The restriction in this deed limited the spoke-mill to the use of water which would not 'interfere' with, or prevent the running of the grist-mill and the saw-mill, and to a non-user of the water when necessary to the running of the other mills.]

"[These deeds did not and do not confer upon Jacob Klaer and his assigns the unrestricted right to run his spoke-mill to the exclusion of the saw-mill. As we understand these deeds, the plaintiff had the first right to the water for his grist-mill, 'of the capacity and power as then constructed.' The saw-mill had the next right to water to run it, and the spoke-mill had the right to use of the surplus water. If plaintiff had not work for his grist-mill, he had not the right to appropriate the water to his spoke-mill to the exclusion of the saw-mill. He was limited, as we have said, to the reasonable use of water for that grist-mill, so long as he ran it."]

The verdict was for defendants, and after judgment thereon, plaintiff took this writ, and among his assignments of error were the admission of the evidence noted above, the answers to his points, and the portions of the charge in brackets.

*H. C. Jessup* and *C. W. Bull*, for plaintiff in error.—It is a general rule of construction applicable to grants of water-powers, that when the question arises whether by a grant of sufficient water to propel a particular kind of machinery, the terms employed are used merely to indicate the quantity of water intended to be granted, or to restrict the use of the water to the machinery specified, the former construction is to be favored, when the language of the grant will admit of such construction. The grounds upon which this rule rests are twofold:—

[Klaer *v.* Ridgway.]

1. It is more beneficial to the grantee without being more oner-ous to the grantor, that he should be permitted to apply the water to any machinery he pleases not requiring a greater amount of power than that specified in the grant.

2. It is supported by public policy. The interests of the com-munity will generally be best promoted by allowing an unrestricted application of the power to such machinery as will be most profit-able to the owner: Ashley *v.* Pease, 18 Pick. 268.

There is another rule of construction equally well settled. It is that in every grant, it being the act of the grantor, all doubtful expressions are to be taken in a sense most favorable to the grantee: Cromwell *v.* Selden, 3 N. Y. 256; Angell on Watercourses, 6th ed., § 149 a; Pratt *v.* Lamson, 2 Allen 281; Tourtellot *v.* Phelps, 4 Gray 374.

*G. G. Waller* and *D. M. Van Auken*, for defendants in error.—At the time Mott sold the spoke-mill he owned and retained the other two mills, and it would hardly be supposed that he would cripple and render comparatively useless either of them. What was his intention? There can be no room for doubt as to what was intended in the grant of the spoke-mill. Words of restriction could not be more clear and positive. "No use whatever shall be made of said water for any purpose which shall in any manner interfere with the grist-mill or the saw-mill." It was also limited to a six-horse power. But, says plaintiff's counsel, "This is obscure." The word grist-mill is used, and then grist-mill and saw-mill. If the parties did not mean to include the saw-mill, why insert it? It is there, put there by the parties and made a condition of the grant, and cannot be argued away. The grant distinctly limits the quantity of water to be used, but does not limit the kind of machinery. Klaer, by the change in his race, flume and wheel and by increasing the capacity of the spoke-mill, and necessitating a greater supply, creates low water, and then complains. In construing a deed, the court must look into the circumstances under which it was made, as evidencing the intention of the parties: Cox *v.* Freedley, 9 Casey 124.

Mr. Justice PAXSON delivered the opinion of the court, May 6th 1878.

The assignments of error from one to eight inclusive, raise sub-stantially the same question and may be considered together. In each of them the complaint is that the court below erred in its con-struction of the deeds from John C. Mott to the plaintiff.

At the time of the execution and delivery of the deed of Sep-tember 22d 1866, Mott was the owner of two mills, a grist-mill and a saw-mill. Prior to that date he had leased to the plaintiff a piece of ground for a spoke-factory. All of these mills were supplied

with water from the Sawkill creek.   On the day above mentioned Mott conveyed to the plaintiff the land previously leased to him for a spoke-factory, with the right "of using the water for the uses and purposes of the property hereby conveyed, equal to six horse-power, with the privilege to take the same from the race leading to the grist-mill of said Mott where it is now taken.   And in case said race leading to the said grist-mill shall be abandoned, the said party of the second part shall have the right and privilege to take and use said water from the dug-race on the Dingman side of the Sawkill creek, at such point most convenient to the said party of the second part.   Provided, however, that the grant of water as above described shall in no way interfere with the grist-mill of the party of the first part; but it is expressly understood that the said grist-mill is in all cases to be first supplied, and in case of low water the said grist-mill shall be entitled to the exclusive use of the water if necessary to drive said mill; and provided further, that no *use* whatever shall be made of said water by said party of the second part, his heirs, executors or administrators, *for any purpose* which shall in any manner interfere with the grist-mill or the saw-mill of the said parties of the first part.   And it is further understood and agreed, that the said John C. Mott, his heirs, executors and administrators, will not erect any building on the adjoining premises or permit the same to be erected, or engage himself in the business of making spokes and hubs, or sell or permit any other person or persons to do so."   Each of the above provisoes has a distinct object.   The first is to limit the grant of water so that it shall in no way interfere with the supply for the grist-mill.   The grist-mill is in all cases "to be first supplied," and in case of low water "shall be entitled to the exclusive use of the water."   The language of this proviso is explicit.   It refers to the quantity of water granted, and subordinates the spoke-mill to the grist-mill. The latter must first run, then if there was water enough left, the plaintiff could run his spoke-mill.   Having secured this primary object and protected his grist-mill from loss of water necessary to its operation the grantor proceeds to protect both the grist and saw-mill from competition by restricting the purpose to which the water is to be applied.   Upon this point the language of the second proviso is equally clear and explicit.   It says: "No *use* whatever, shall be made of said water by said party of the second part, his heirs, executors or administrators, for any *purpose* which shall in any manner interfere with the grist-mill or the saw-mill of the said parties of the first part."   This restriction has no reference to the quantity of water to be used by the spoke-mill; it merely limits the purpose to which the water shall be applied.   It shall not be used for any purpose which shall in any manner interfere with the grist-mill and saw-mill.   That is to say, the plaintiff should not erect a rival grist or saw-mill and use the water to run it.   This

[Klaer *v.* Ridgway.]

is the obvious meaning of the second proviso. It does not, and was not intended to protect the saw-mill against the use of the water for the spoke-mill, but only against its use for a purpose detrimental to the saw-mill.

So much is clear. On the 1st of April 1868 Mott, being still the owner of the grist-mill and saw-mill, conveyed the grist-mill to the plaintiff by a deed containing the following clause : " Also the right and privilege to the use of the water from the race and dam belonging to said Mott, sufficient to run a grist-mill upon the premises hereby conveyed, of the capacity and power as the mill now constructed ; or the said Klaer may use the water to the same extent as now used by said grist-mill for any other purpose of propelling or running machinery (except for a saw-mill), in lieu and place of the water now used by said grist-mill ; but in no case is said Klaer, his heirs or assigns, to have the right to use any more water than is now necessary for said grist-mill." Thus the plaintiff became the owner of both the spoke-mill and the grist-mill ; Mott continuing to be the owner of the saw-mill. After the death of Mott the defendants purchased the saw-mill from his executors, and they now have whatever water-right was left in Mott after the conveyances above mentioned, and no more. What was that right ? He had first conveyed to plaintiff the right to the extent of six-horse power of the water left after supplying the grist-mill. He then conveyed to him the grist-mill, with the right to use sufficient water to run it as of its then present power, or to " use the water to the same extent as used by said grist-mill for any other purpose of propelling or running machinery (except for a saw-mill) in lieu and place of the water now used by said grist-mill." It is a familiar rule that a deed or grant must be construed most strongly against the grantor. This applies with especial force to a reservation or restriction in a deed whereby there is a withholding of something from the grant. Here the grantor limits the quantity of water to the amount then required for the grist-mill, but restricts the purpose to which it shall be applied only to the exclusion of a saw-mill. He excludes such use to protect the saw-mill which he still owned, but for any other purpose the plaintiff was at liberty to use the water. It is clear that under the two deeds from Mott to the plaintiff, the water as between the parties must be applied, first, to the grist-mill ; second, to the spoke-mill ; and third, to the saw-mill, owned by Mott. The latter would have no right to use the water for the saw-mill until the grist and spoke-mills had been supplied. It is equally plain that under the last deed to plaintiff he would have the right to shut down the grist-mill and run the spoke-mill as against Mott, and his grantees of the saw-mill.

This covers all that is really important in the case. The remaining assignments refer to the admission of evidence, and may be briefly disposed of. It was error to admit the evidence contained

[Klaer *v.* Ridgway.]

in bill of exceptions No. 2, (9th specification).    It was irrelevant, and may have misled the jury.    It is not material whether the plaintiff objected to the building of the dam.'   The defendants had a right to construct a dam upon their own premises.    It was only its use that could injure the plaintiff, and it is of its use only that he complains.    Equally objectionable was the evidence referred to in the tenth assignment.    It proved merely an unaccepted proposition, and had no bearing upon the question whether the defendants had used water which of right belonged to plaintiff's mill.

All of the assignments of error are sustained.    The judgment is reversed, and a *venire facias de novo* awarded.