# Sheffield Water Company *v.* Elk Tanning Company, Appellant.

*Deed—Reservation—Exception—Waters—Water companies.*

1. The essential characteristic of a reservation in a deed as distinguished from an exception is that its subject is something that did not exist before, but is created by and grows out of the transaction. An exception applies only where the subject already exists.

2. Where a deed invests the grantee with the legal title to the whole of the premises described in the grant without excepting an inch of land falling within the description, or any of the structures, buildings or improvements thereon, but reserving to the grantor the right to derive a water supply from a particular stream, using for the purpose the dam, reservoir and pipes constructed and laid upon the premises conveyed, the easement is a newly created right arising from a reservation, and not from an exception.

3. The reservation of an easement in land such as a water right does not of itself import a use in the grantor to the exclusion of the grantee. If an exclusive use is intended, it should be so expressed in the deed.

4. A reservation in a deed is exclusively for the benefit of the grantor; it is not a grant of anything to the grantee, but is in derogation of the grant and therefore an abatement. It results that in construing an ambiguous reservation it is to be taken most strongly against the grantor, since he is the person to avoid ambiguity by speaking out.

5. Where a deed reserves water rights with use of reservoir, pipe lines, etc., but not an exclusive use of the water right and plant, and subsequently the grantee conveys the land to another without mentioning any reservation of water right, but thereafter continues to use the water right, the grantor in the original deed cannot complain of the continued use of the water right by its grantee in the absence of any objection by the grantee in the second deed; and even the latter could not successfully object because it took title with the full knowledge of the visible use of the easement of the water right. The giving and accepting a deed under such circumstances would constitute a parol reservation of the easement.

Argued May 3, 1909. Appeal, No. 360, Jan. T., 1907, by defendant, from decree of C. P. Warren Co., Dec. T., 1906, No. 43, on bill in equity in case of Sheffield Water Company *v.* Elk Tanning Company. Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Bill in equity for an injunction. Before LINDSEY, P. J.

The facts are fully stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing various exceptions, findings of fact and conclusions of law.

*John G. Johnson,* with him *Thomas H. Murray, O. C. Allen, W. H. Allen* and *C. H. McCauley,* for appellants.—The true construction of the Crary deed is that which recognizes a right in the tanning company to use water from the reservoir through the line of pipes for its three tanneries and appurtenant houses.

If there was any ambiguity in the reservation, it was set at rest by the contemporaneous interpretation of the parties.

*C. W. Stone,* with him *Edward Lindsey, W. W. Wilbur, Ralph W. Stone* and *Earle MacDonald,* for appellee.

OPINION BY MR. JUSTICE STEWART, October 11, 1909:

The assignments of error which challenge the findings of fact by the court need not be discussed, since the undisputed facts are sufficient in themselves for all practical purposes. Nor need we concern ourselves with the several conclusions of law, except as they relate to the reservation in the deed of conveyance. The determination of the case must rest finally upon the construction of this reservation. The facts are these: For a number of years prior to 1887 three separate tanning plants were operated at or near the village of Sheffield in Warren county by three distinct partnerships. One tannery known as the Tionesta was owned and operated by John McNair & Company; one known as the Horton, by Schoellkopff, Horton & Company, and one known as the Sheffield, by Horton, Crary & Company. Each of these companies had erected a number of dwelling houses upon its own land for the accommodation of its employees. In 1887, with a view to providing a water supply for the several tanneries and the tenements connected therewith, and with a further view to provide a like

supply for the inhabitants of Sheffield generally, and protection from fire, these three firms agreed verbally between themselves, to construct and operate at their joint expense a water system. With respect to the stream from which a supply of water was to be drawn each firm was a riparian owner. The essential features of the agreement were, that the water was to be drawn from Deer Lick Run, and to this end a dam was to be built across the run on a tract of land owned by Horton, Crary & Company designated as lot No. 237, and a reservoir constructed at a convenient lot on the same spot; the pipes for conveying the water from the reservoir to the several tanneries, and such other places as were to be supplied, were to be laid upon and over any intervening land owned by either of the firms; one-half the entire expense of the enterprise was to be borne by Horton, Crary & Company, and a one-fourth by each of the other firms, and all accounts of expenditure in connection with the work and its maintenance, the expense of which was to be borne in the same proportion, were to be kept by Horton, Crary & Company. Within a short time the water system, including dam, reservoir, pipes leading to and therefrom, pipes, valves, faucets and hydrants in the village of Sheffield, was constructed at a cost of upwards of $23,000. The agreement was fully executed in all its parts and the water supply furnished accordingly. In April, 1893, the three firms were taken over by a corporation known as the Penn Tanning Company, each conveying its tannery, lands and appurtenances to this corporation. The Penn Tanning Company continued in operation the several tanneries until April, 1905, during all of which time it was exercising, in connection with the water system that had been established, the same rights that had been exercised and enjoyed by the several firms. In April, 1905, the Penn Tanning Company was consolidated with and merged in the Elk Tanning Company, the defendant in this case, and all the property and rights of this company became and were vested in the latter. The Elk Tanning Company having entered into possession continued the use of the water from Deer Lick Run for the several tanneries and their respective tenements in exactly

the same way, without objection or interference, until May, 1906. The Penn Tanning Company while operating the tanneries had contributed its proportion of the money required for the maintenance of the water system. Whether the Elk Tanning Company had done the same is a matter in dispute. However much the original agreement for the construction of the water system was influenced by expectation of supplying the public of Sheffield, it is very certain that the water used outside of the tanneries and their tenements was very inconsiderable, such outside use being confined to seven houses.

Turning now to the plaintiff, the Sheffield Water Company. This company was incorporated May 5, 1906, to supply water to the public at the village of Sheffield, and to such persons, partnerships and associations residing therein as might desire the same. It is enough, without reciting the various conveyances, to know that this company became legally invested with whatever right of property in connection with the water system remained in the three tanning firms after their conveyances to the Penn Tanning Company. On October 13, in the same year, the plaintiff company, having previously notified defendant that its tenants would be required to pay water rentals, and of their refusal to do so, proceeded because of this refusal to disconnect the pipes and lines through which defendant's tenements were supplied. The defendant company through its employees re-established the connections. The plaintiff company three times thereafter broke these connections, and the defendant company just as often restored them. The plaintiff company then filed the present bill praying that the defendant company be enjoined against interfering further with pipes, hydrants, mains or other property of the plaintiff. The appeal is from the decree awarding a perpetual injunction.

The only rights the plaintiff company has in the water plant constructed originally by the three tanning firms, are such, and such only, as did not pass from Horton, Crary & Company, Schoellkopff, Horton & Company, and John McNair & Company to the Penn Tanning Company, under the deeds of conveyance from the former to the latter. Every

right, title and interest of each of these firms in the several properties conveyed passed to the Penn Tanning Company, except what was in terms expressly reserved. It follows, therefore, that unless we can find in the written reservation in the deed a right in the plaintiff company to deny the defendant company an equal use with itself of the water supplied through dam, reservoir and pipes constructed and laid through the joint adventure of the three tanning firms, its turning off the water supply so as to prevent it reaching the properties of the defendant company was a wrongful act, and no injunction should have been allowed restraining the defendant company from doing what it peaceably could to recover its rights. As we have already pointed out, the dam and reservoir were on the land owned by Horton, Crary & Company; the pipes were laid on land owned by the same firm as well as on land owned by John McNair & Company. By deed dated April 22, 1903, the several firms conveyed their respective tanneries and holdings to the Penn Tanning Company, with the single exception that the conveyance from Horton, Crary & Company, did not include lot No. 237 on which the dam and reservoir were located, or lot No. 248. But on the following day Horton, Crary & Company did convey by deed these two lots to the Penn Tanning Company, and it is in this deed that the reservation occurs on which the plaintiff company largely rests its right. It is as follows: "Reserving, however, unto the party of the first part, their heirs and assigns, the right to maintain a water reservoir on Deer Lick Run in Sheffield township where now located, or else where thereon, and to extend, rebuild and repair the same as may be necessary, with the right to take the water of Deer Lick Run for supplying Sheffield, with the right of way and entry at all times, and the right to lay and maintain pipes leading thereto and therefrom; second party to contribute towards maintenance of such reservoir and pipe in proportion to the amount of water used. This conveyance is made subject to the restrictions, exceptions, reservations, rights and liabilities contained in the various deeds, conveyances, and assurances to first parties for said premises; and to any rights therein or portions thereof which

may have been granted or conveyed by first parties prior to January 1, 1893." The earlier deed for the other properties of Horton, Crary & Company, contained the following reservation: "Together with the tanning plant, improvements and buildings thereon, reserving a right of way and entry at all times to lay and maintain water pipes for supplying Sheffield." The deed from Schoellkopff, Horton & Company to the Penn Tanning Company contained this reservation: "Also excepting and reserving all oil and gas wells now upon all of said premises, and all tanks, machinery, fixtures, pipes and appurtenances to the same belonging and all lines." The reservation in the deed from John McNair & Company was as follows: "Also excepting and reserving all oil and gas wells now upon all of said described premises, and all tanks, machinery, fixtures, pipes and appurtenances to the same belonging, and all pipe lines."

The case turns largely, if not entirely, on the effect to be allowed the reservation in the deed from Horton, Crary & Company first above recited. Independent of it the plaintiff company is without any right whatever in or upon the premises conveyed by Horton, Crary & Company to the Penn Tanning Company. The learned chancellor who heard the case in the court below adopted what we must regard as a wholly mistaken view of the nature and effect of the clause. In holding it to be not a reservation but an exception, he gave the plaintiff company a large advantage to which it was in no way entitled. The essential characteristic of a reservation as distinguished from an exception is, that its subject is something that did not exist before but is created by and grows out of the transaction. An exception applies only where the subject already exists. "A reservation is the creation of a right or interest which has no prior existence as such in a thing or part of a thing granted. It is distinguished from an exception in that it is of a new right or interest. An exception is always a part of the thing granted; it is of the whole of the part excepted:" Kister v. Reeser, 98 Pa. 1. To the same effect is Moffitt v. Lytle, 165 Pa. 173. The new right created by this transaction was an easement in the land conveyed, to be en-

joyed as a thing apart from and in no wise dependent on the ownership of the land. Before the conveyance to the grantee, of course no easement existed in the grantors; before the conveyance they could then do all they or their assigns can now do under the reservation; but they could then do it as owners of the land, whereas now they can do it only under the easement which is the newly created right. It follows that a very different effect is to be given the deed than the learned chancellor allowed. Nothing was excepted out of the general grant; the deed invested the grantor with the legal title to the whole of the premises described in the grant; it conveyed to the grantee every inch of land falling within the description, whether occupied by dam, reservoir, pipes, tannery or otherwise howsoever, subject only to the right of the grantors, their heirs and assigns, to do those things upon the premises which the grantors had expressly reserved the right to do. It was manifest error, therefore, to hold in answer to plaintiff's eighth point, "That on the 11th day of October, 1906, the Sheffield Water Company, the plaintiff in this case, owned, possessed and had the reservoir on Deer Lick Run aforesaid and the aforesaid rights therein and of the water of Deer Lick Run and the said pipes leading thereto and therefrom," etc. Now what was the right reserved? It was the right to derive a water supply for Sheffield from Deer Lick Run, using for the purpose the dam, reservoir and pipes constructed and laid upon the premises conveyed, with the right to extend and rebuild the same as might become necessary. No other object is expressed in the reservation than the supplying of Sheffield with water; and this indeed in point of fact must have been the whole object and purpose of the reservation, since by the deed the grantors were parting with every interest they had outside of Sheffield which could be possibly served through a continuance of the water system. The objects which the court finds the parties had in view in constructing the water system were, to supply the several tanneries, the dwellings of their employees and the village of Sheffield. With the passing of the deed the grantors were concerned thereafter only as to the latter purpose. In endeavoring to understand just what was meant

by the right reserved to take the water from Deer Lick Run for supplying Sheffield, it is important to remember that at the time the reservation was made, and during all the previous years, the supply required by the village, exclusive of the dwellings occupied by the employees of the tanneries, was insignificant when compared with the total consumption. While it is not expressly found as a fact that it amounted to but one per cent of the whole, there was direct evidence uncontradicted to that effect, and the fact found by the court that but seven buildings in Sheffield outside those occupied by tannery employees were being furnished with water, is strongly confirmatory of the testimony. The evidence in the case would have clearly justified a finding that the prime consideration that led to the construction of the water system, was the advantage that would result to the three firms enlisted in the enterprise, through increased facilities and conveniences in connection with their tanning, and that the furnishing of water to Sheffield was simply incidental. The reservation is to be construed in the light of the situation as it then was. Was it intended that the right reserved was to be so extensive as to embrace the whole and entire village of Sheffield so as to defeat in part, and a very important part at that, the original purpose which the water system was designed to serve? Could the grantee have understood from the reservation that it was denying its operatives living in its houses free water from a plant which had passed to it with the grant? While perhaps it would be doing no violence to the language used in the reservation to hold that such was the intention and understanding, the situation and nature of the subject-matter, and the relation of the parties thereto, make that impossible. It is important here to notice several things. Sheffield was not an incorporated borough with fixed boundaries, but a village with indeterminate limits; it was without legal entity, and therefore incapable of contracting; it could not and did not give the plaintiffs or their predecessors any right or privilege in regard to a water supply. All the plaintiffs could do in the matter of furnishing water in that neighborhood, could be done by any other party having equal facilities.

The plaintiff company's right in this regard went no further than the separate, individual contracts with people residing within that neighborhood carried. Its right to so contract with individuals to furnish water supply to them, was not secured by the reservation, but only the right to derive such water supply as would be required to that end from Deer Lick Run through defendants' land. That right remains and is unquestioned; but how does it follow that the defendants' employees occupying fifty-two dwellings belonging to the defendant company, in the same neighborhood and upon the very land conveyed by the three firms to the defendant company, and who decline to contract with the plaintiff company for a water supply, are to be denied the privilege of securing their water from any other source they can, even from the defendant? If the reply is that the right reserved to the grantors was an exclusive one as to the waters of Deer Lick Run and the defendant company's water plant for supplying Sheffield, the questions at once occur, where and what is Sheffield? what does it embrace? and, what is far more important, where is such exclusive right expressed in the reservation? Certainly exclusiveness is not expressed, nor does it result by necessary implication. The reservation of an easement in land conveyed does not of itself import a use to the exclusion of the owner: Moffitt v. Lytle, 165 Pa. 173. If it had been intended, it should have been expressed. The nature of the subject-matter and the situation of the parties make it most improbable that it was intended. Having regard to the language of the reservation and the facts as they were at the time it was made, we can find in the reservation nothing more than a purpose to provide against a possible neglect or refusal on the part of the grantors to continue a water supply to the people of Sheffield outside of their own employees. Neither in the text nor any of the circumstances surrounding do we find anything suggesting that the parties had in contemplation a supply of water to Sheffield through an independent agency, except in the event that the grantees failed to furnish it. The last sentence in the reservation, "Second party to contribute towards maintenance of such reservoir and pipe in proportion

to the amount of water used," is of large significance.  It cer-
tainly contemplated a continued use of both by the grantee;
and as the situation then was, it must have contemplated a
very large use, for as we have seen, at this time as for years
before but a very limited supply of water was required out-
side of the tannery and the dwellings appurtenant.  But what
limit was put to this use?  It is not contended that the tan-
neries were excluded.  Theretofore there had been no distinc-
tion in this regard between the tanneries and the dwellings;
both were included in the original design, and both were at
that time being served just as though the dwellings were re-
garded as part of the tanneries.  If the purpose was thereafter
to exclude the dwellings, why, in providing that the grantee
should pay towards the cost of maintenance in proportion to
the water used, was not a limit put on the use?  The fact that
no limit was defined, that there is no express exclusion of the
dwelling, is to our mind a clear indication that no exclusion
was intended.  Not only so, but the reservation being silent
with respect to a limit, we are not at liberty to supply one;
the reservation must speak as it is written.  The learned
chancellor in discussing this last sentence wholly mistakes
the true rule of construction.  We quote from his opinion,
"This language is too vague and indefinite to affect the
reservation in any manner whatever.  It conveys no right to
the grantees in the deed to use the water. . . . It is therefore
void.  It says, second party is to contribute towards mainte-
nance of such reservoir, etc., in proportion to the amount of
water used.  Who shall say what proportion of water second
party may use?  It may want to use all of it, or two-thirds or
one-half of it.  The first party may not want to let it use but
one-third, or one-fourth, or one-eighth.  How is this dis-
agreement to be settled?  No court can say how much second
party may use from the language of the clause.  It is there-
fore not enforcible and void."  This goes very wide of the
mark.  A reservation in a deed is exclusively for the benefit
of the grantor; it is not a grant of anything to the grantee, but
is in derogation of the grant, and therefore an abatement.  It
results that in construing an ambiguous reservation it is to be

taken most strongly against the grantor, since, as was said in Taylor v. Smith, 2 Whart. 432, he is the person to avoid ambiguity by speaking out. "It is a familiar rule that a deed or grant must be construed most strongly against the grantor. This applies with especial force to a reservation or restriction in a deed whereby there is a withholding of something from the grant." Klaer v. Ridgway, 86 Pa. 529. If there be vagueness and ambiguity here, as there manifestly is, it can only operate to the prejudice of the grantor and not the grantee. The reservation measures and defines the extent of the right, reserved; only inferentially does it measure the extent of the grant, and that by way of deduction or abatement. The reducing factor may be so uncertain as to make it impracticable to tell what, if anything, is to be abated; in which case, if the reservation be not totally void, it is reduced to its narrowest limits as against the grantee. The true and only significance of the sentence in the present controversy is, that it expresses a clear recognition of the right in the grantee to a continued use of the water plant in the manner that such right had theretofore been exercised.

Another feature of the case calls for consideration. Conceding the right of the plaintiff company to supply Sheffield with water through this system, the defendant company can only justify by showing that it also had a right to the use of the water. At the hearing a deed from the Penn Tanning Company to the Pennsylvania Lumber Company, dated May 25, 1903, conveying to the latter lot No. 237 on which were the dam and reservoir of the water system, was offered and admitted. This deed was executed and delivered within three days after the conveyance from Horton, Crary & Company to the Penn Tanning Company. It contains no reservation whatever with respect to the water privileges or rights. It is argued on behalf of the appellee that after this conveyance, no rights with respect to the water remained in the Penn Tanning Company, and therefore the Elk Tanning Company acquired no right with respect to the water under its deed from the Penn Tanning Company, which was long subsequent. The lumber company is not a party to this controversy; it is

not here asserting any rights; nor has it asserted any up to this time antagonistic to the right of the appellee to derive its water supply from the reservoir and pipes upon its land; but on the contrary it has acquiesced in the appellant's use of the water just as it had been accustomed to use it. We are not now dealing with the lumber company and can therefore adjudicate nothing that would conclude it in any controversy with the appellee; but in determining the rights of the appellee, as against the plaintiff in this controversy, we are fully warranted in having regard to the continued acquiescence on the . part of the lumber company, and the general situation at the time of the conveyance to the latter. At the time of the grant from the Penn Tanning Company to the lumber company, the reservoir and dam on lot No. 237 were being maintained and used as the source of supply for the whole water system, and a system of pipes was maintained on the same premises. The water thus derived was used at the grantor's tannery, other tanneries as well, and in the town or village of Sheffield. The dam, reservoir and pipes were absolutely indispensable to the system. Except for these the supply would be entirely cut off. The occupancy of lot No. 237 for these purposes was actual, visible and notorious; it was wholly inconsistent with the grant of the lumber company, and under all our authorities this would constitute a parol reservation of the easement, and the lumber company would take subject to it. It is only necessary to refer to Randall v. Silverthorn, 4 Pa. 173; Seibert v. Levan, 8 Pa. 383. Where the facts are such as clearly raise an implied reservation, we are quite as much obliged to take judicial notice of it as where the reservation is expressed.

We have not considered the reservations contained in the deeds from Schoellkopff, Horton & Company and John McNair & Company, for the reason that we regard them as unimportant in this connection. The reservations they contain as to pipes, we think beyond question relate to oil pipes, and have no reference to anything in connection with the water system.

Upon a review of the whole case we are of opinion that the injunction was improvidently issued. The injunction is dissolved and the decree reversed at the cost of appellee.