Philip Morris & Co., Ltd., Inc., *v.* Stephano
Brothers et al., Appellants.

Argued May 19, 1938.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Walter Lee Sheppard,* and with him *William C. Alexander, Jr.,* of *Foulkrod, Sheppard, Porter & Alexander,* for appellants.

*Morris Wolf,* of *Wolf, Bloch, Schorr & Solis-Cohen,* with him *Samuel A. Goldberg,* for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1938:

This is an appeal from a decree restraining the corporate defendant, Stephano Brothers, from paying, and the individual defendants, Constantine Stephano and Stephen Stephano, from receiving the dividends on the preferred stock of the corporation that were accrued and unpaid prior to January 1, 1924. The individual defendants own all the preferred stock and half the common stock of the defendant corporation. It is alleged that they waived their right to these dividends under a written agreement, entered into on January 18, 1924, between the plaintiff and the defendants. This agreement expired by limitation on March 31, 1929.

There is no dispute as to the facts. The two corporations are well-known importers of tobacco and manufacturers of cigarettes. For their mutual benefit they made the agreement in question, in which plaintiff corporation agreed to act as exclusive selling agent for Stephano Brothers' brands of cigarettes and to increase their sale annually during the five-year period of the agreement, 1924 to 1929, and defendant corporation agreed to manufacture plaintiff's brands of cigarettes for the same period for a fixed price. The individual defendants joined in the agreement in order to give the plaintiff corporation the right or option to purchase for cash all of their stock at par, at any time prior to March 31, 1929, provided that the option was exercised by the giving of written notice on or before October 1, 1928. They also agreed conditionally to waive their right to dividends accrued and unpaid on the preferred stock prior to January 1, 1924.

This business arrangement did not turn out as expected; the plaintiff failed to increase the sale of Stephano Brothers' cigarettes to the agreed minimum. This was cause for cancellation of the agreement, if either corporation wished to do so, but instead, each year they made supplemental agreements, reducing the minimum required to the amount of the actual sales, and the agreement continued until it terminated by its own limitation at the end of the five-year period, March 31, 1929. Plaintiff did not exercise its option to purchase the aforesaid stock.

On November 14, 1931, more than two and one-half years thereafter, plaintiff acquired by purchase one-half of the common stock of Stephano Brothers which was previously owned by Tobacco Products Corporation. It then notified defendant corporation that it objected to the payment of any dividends on its preferred stock which accrued and were unpaid prior to January 1, 1924, asserting that the stockholders (the individual defendants) had waived and contracted away their rights to receive such dividends, and that it would be in violation of plaintiff's rights if such payments were made. Defendant corporation insisted it had the right to declare and pay the dividends, and the individual defendants insisted upon their right to receive the amount, $94,000. The court below granted the relief sought and entered a final decree enjoining the corporation from declaring and the other defendants from receiving said dividends.

The plaintiff's claim and the decision of the court below rest solely upon an interpretation of the waiver clause of Paragraph 11 of the agreement, which is as follows:

"11. The parties of the third part [Constantine and Stephen Stephano] as owners of all the Preferred Stock of the party of the second part [Stephano Brothers], hereby agree to waive, during the period of this agreement, the right of the said Preferred Stock to receive

any cumulative dividends accrued and unpaid before the First day of January, 1924, and further agree that in the event that the option hereinafter given to the party of the first part [Philip Morris & Company], to purchase all of the said Preferred and Common Stock of the party of the second part, is exercised, or in the event that this agreement is continued for the full term of five years ending March 31, 1929, the said waiver of the right of the said Preferred Stock, to receive any cumulative dividends accrued and unpaid before the First day of January, 1924, shall be and become absolute. . . ."

The learned chancellor held that "One of the several contingencies upon which it was agreed that the waiver should become absolute, namely, the continuance of the agreement for the full term of five years, ending March 31, 1929, has occurred. The waiver has therefore become 'absolute.' The owners of the preferred stock have waived forever all their right to receive the dividends thereon which accrued and were unpaid before January 1, 1924."

Our examination of the agreement has led us to the opposite conclusion. We are certain the parties had no thought of continuing the waiver after the option and the agreement itself had expired. The use of the word "absolute" in Paragraph 11 is not clear. It is a mistake to assume that it is necessarily synonymous with "permanent." This is obvious when the agreement is read as a whole, as it should be to ascertain the intention of the parties. Paragraph 12 specifically provides that unless the option to purchase is exercised according to its terms "it shall thereupon terminate and expire." Paragraph 14 provides that either party shall have the right to terminate the agreement if the plaintiff shall fail to increase the sale of defendant corporation's cigarettes, in which event "the option of purchase *hereinbefore* given" and "the waiver of cumulative and

accrued dividends, shall thereupon cease and become void." [Italics ours.] In this light it is difficult to see what sense there would be in making the waiver permanent if the agreement terminated and the option was not accepted. When the agreement is read as a whole, the reasonable construction is that during the five years in which it ran, or more particularly for the period in which the option to buy the stock could be exercised, defendant corporation would not pay out the accrued dividends—the right of the individual defendants to demand their payment in that period was waived absolutely.

However, be that as it may, and assuming that the agreement is as contended by plaintiff and admits of no contrary interpretation, the fact remains that when it terminated, and plaintiff had not exercised its option, it had then no interest in defendant corporation and could not, in law or in equity, maintain any action on the agreement. The dividends in question could have been declared and paid the next day, or the next year, without interference from anyone. This is true because plaintiff had then no enforceable contractual right. All its rights under the agreement were terminated. Therefore, by buying stock of defendant corporation it could not make for itself a cause of action. That purchase had nothing to do with the agreement; it was an independent transaction in which the defendants had no interest or concern, and it conferred no rights on plaintiff under the previously terminated agreement. When there was no right of action at the termination of the agreement, one could not be created later by the simple process of going outside and buying from a stranger to the agreement stock of the defendant corporation.

Decree reversed and bill dismissed; costs to be paid by appellee.