JOSEPH TOKAS *et al. v.* J. J. ARNOLD Co., *Inc., et al.*

(No. 9087)

Submitted September 4, 1940.  Decided November 19, 1940.

614

Patrick J. McGuire, for appellants.
D. Paul Camilletti, for appellees.

RILEY, PRESIDENT:

This is an appeal from the decree of the Circuit Court of Brooke County making permanent an interlocutory decree of injunction. The interlocutory order restrained the J. J. Arnold Company, Inc., a corporation, and others, defendants below and appellants herein, from entering the property of Joseph Tokas, and others, plaintiffs below, from doing any and all acts which may be considered preparation for or actual engagement in the mining operation commonly known as "strip mining."

Plaintiffs acquired title to said land from J. J. Arnold Company by two deeds, dated June 26, 1925, and April 23, 1927, respectively, for a total consideration of $2,500.00. Each deed contained identical exceptions and reservations, to be dealt with hereinafter. Twelve years after the last mentioned deed, the Arnold Company purchased from one John R. Carmichael an acreage of Pittsburgh or Number Eight seam of coal, part of which underlies the Tokas property, together with certain mining rights, which coal and mining rights were outstanding in third persons at the time of the Tokas conveyances. On or about October 16, 1939, the Arnold Company, under its recently acquired rights, entered on the Tokas property and in the preparations for "stripping" operations in connection with the removal of the Pittsburgh or Number Eight seam of coal. The present suit followed.

In order to clarify the issues between the parties it becomes necessary to take note of exceptions and reservations in a certain deed of June 15, 1915, between the El-

sons, as well as the three documents executed by the Elsons, namely, a coal royalty lease to J. J. Arnold, dated December 1, 1919; a deed to J. J. Arnold, dated August 27, 1923, for the Pittsburgh or Number Eight seam of coal; and a deed to J. J. Arnold Company, dated October 22, 1923, for the surface of the property, subject to the foregoing royalty lease and the deed to the Pittsburgh seam of coal. The provision under which the right to "strip" is claimed is contained in the coal royalty lease.

Prior to June 15, 1915, Harley R. Elson was owner in fee simple of three certain tracts of land, containing an acreage of 176 acres. On that date, Harley R. Elson conveyed said tracts of land to Galen O. Elson and Dale Elson, in which he reserved from the conveyance "an undivided one-third (1-3) interest, of, in and to all the coal underlying all the said tracts or parcels of land hereinbefore mentioned and described and conveyed; together with all the mining rights and privileges that are usual, necessary and proper in digging, mining, removing, carrying away and marketing all the coal underlying said premises, without reservation, and without any liability for damages from the removal of all of said coal, without leaving any support for the overlying strata, and without any liability for damages to the surface or anything thereon, from the breaking of said strata, together with the right of ventilation and drainage, and of access to said mines by electric, steam, rail or other roads, for the purpose of carrying men and material to said mines or for the purpose of removing and carrying away the said coal, together with the right to transport through the shafts, openings, rooms, passages, entries, ways and etc., under ground, other coal belonging to the said party of the first part, his heirs and assigns, or which may be hereafter acquired from the adjacent or other tracts of land, together with the right to enter upon said surface land, at such points as may be necessary to make openings, and sink shafts or wells for draining and ventilating said mines, and for the purpose of depositing dirt or debris taken out of said mines." This deed further provided that such shafts, openings, or places

of deposit shall be in the ravines and waste places upon the ground as far as possible, and not nearer than 600 feet of the principal buildings on said land at the time the land is taken and used for "said purposes."

The three Elsons, involved in the foregoing deed, on December 1, 1919, joined in what is termed a "coal royalty lease", whereby they demised, leased and let unto J. J. Arnold, as lessee, subject to certain "covenants, conditions and stipulations" therein contained "all the Pittsburgh or Number Eight vein of coal in and underlying" the tracts mentioned in the deed of 1915. This lease, after providing that no part of the surface above the Pittsburgh or Number Eight seam should be used by the lessee for any purpose thereinbefore specified, other than to construct and maintain air shafts, etc., theretofore provided, contains the following:

> "It is further agreed and understood that if it shall be necessary to *strip* said coal or any portion thereof, in order to mine and remove the same, as distinguished from drift mining or other methods of mining, then the said Lessee shall have the right to use such portions of the surface of said lands as may be necessary to *strip* said coal, together with the right of installing and maintaining all necessary machinery, appliances and equipment therefor, together with tracks or inclines leading to and from the portion or part of said coal to be *stripped* as aforesaid.

> " * * * that the Lessors * * * hereby waive all surface damage or damages of any sort arising from the mining and removal of said coal in compliance herewith the operation of said mine or mines, * * * or from any cause whatsoever connected with or growing out of the mining or removal of said coal, in accordance with the rights and privileges contained in this lease.

> * * *  * * *  * * *

> "The Lessee further covenants and agrees that he will work and mine said coal in an efficient, workman like and proper manner, according to the most approved and suitable methods of mod-'

ern coal mining, consistent with a mine of this size and capacity, complying in every essential respect with the laws of the State of West Virginia or of the United States, now existing or hereafter enacted, regulating the proper working of mines and coal mining industry. And he further agrees to use every effort known to modern coal mining industry in this vicinity, to mine out all of said coal, whether by drift mining, *stripping* or by other modern methods of mining known to and employed by coal operators in this vicinity." (Italics supplied.)

The rights under this lease were assigned to the Follansbee Gas Coal Company, a corporation, on February 25, 1920, and, after being involved in a creditors' suit, came into the hands of one Joseph J. Goldsmith, on January 29, 1927.

J. J. Goldsmith, at the time of the acquisition of the rights under the foregoing "coal royalty lease", was holder of title to the said Pittsburgh or Number Eight seam of coal, under certain mesne conveyances, to which attention will next be directed.

By deed of August 27, 1923, the Elsons conveyed to J. J. Arnold "all the Pittsburgh or Number Eight vein of coal within and underlying the tracts or parcels of land described (the three tracts mentioned in deed of 1915), subject to, together with and including all the coal mining rights and privileges mentioned and specified in the said deed from Harley R. Elson to Galen O. Elson and others, to which reference has hereinbefore been made, and in a certain coal royalty lease from Harley R. Elson and others to the said J. J. Arnold, bearing date the first day of December 1919 * * * to which reference is hereby made * * * ."

J. J. Arnold and wife by deed bearing date November 27, 1923, conveyed to J. J. Arnold Company the aforesaid seam of coal, incorporating in such deed the foregoing exceptions, reservations and conditions, and, on January 6, 1925, Joseph J. Goldsmith, by deed, obtained the rights of the J. J. Arnold Company.

On October 22, 1923, the Elsons conveyed to the Arnold Company said three tracts, there being excepted from the conveyance all the coal in and underlying said tracts, together with the mining rights and privileges mentioned and specified in the deed from Harley R. Elson to Galen O. Elson and O. Dale Elson (1915) and "subject to the coal royalty lease bearing date the first day of December, 1919."

J. J. Arnold Company conveyed seventy-six (76) acres to Joseph Tokas and others by two separate deeds, one bearing date June 26, 1925, and the other, April 23, 1927. Each of the deeds expressly excepted and reserved all the coal in and underlying said seventy-six (76) acres, "together with the mining rights and privileges mentioned and contained in the deed from Harley R. Elson to Galen O. Elson" (1915), and recites that it is subject to the coal royalty lease of the Elsons to J. J. Arnold (1919) and "the mining rights and privileges therein specified."

September 21, 1933, Goldsmith conveyed his interests, derived, as heretofore set forth, through the conveyance of the Pittsburgh or Number Eight seam of coal by the deed of the Arnold Company, dated January 6, 1925, and under the assignment of said royalty lease to Carmichael. Carmichael, in turn, on July 13, 1939, conveyed to J. J. Arnold Company.

The issue presented is, whether, under the terms and provisions of the deeds referred to in the exception and reservation clauses of each of the deeds from J. J. Arnold Company to Joseph and Anna Tokas, the Arnold Company is given the right to engage in "strip mining" upon plaintiffs' lands, and particularly within six hundred feet of any building upon said lands.

The foregoing delineation of title, though necessarily involved, speaks for itself. This record shows that the Tokases have title to the surface of the land they occupy subject to the exceptions and reservations as to the Pittsburgh or Number Eight seam of coal and mining rights described in the deed of Harley R. Elson to Galen O. Elson and Dale Elson, dated June 15, 1915, and in the coal

royalty lease of the Elsons to J. J. Arnold, dated December 1, 1919; and, in the absence of statutory inhibition, fraud or other vitiating circumstances, the Arnold Company has the right to mine by stripping the Pittsburgh or Number Eight seam of coal underlying said land.

Plaintiffs' counsel, however, says that notwithstanding the exceptions and reservations as to the coal and mining rights, the Arnold Company has no right to mine by stripping because of alleged fraudulent misrepresentations made by J. J. Arnold about the time the Tokas deeds were executed. Fraud and misrepresentation are terms which can, and frequently are, loosely used in both pleadings and evidence. Ironclad is the rule in this state, based as it is on sound public policy, that the charge of fraud to prevail must be clearly, distinctly, and fully proved. *McDonald v. County Court of Logan County,* 94 W. Va. 773, 120 S. E. 891; *National Fruit Product Company v. Parks,* 108 W. Va. 321, 325, 150 S. E. 749; *Atkinson v. Jones, Trustee,* 110 W. Va. 463, 158 S. E. 650, 24 Am. Jur., Fraud and Deceit, Sections 278, 279. Upon a careful consideration of this record we are unable to say that the plaintiffs have met the strict requirements of this rule. When the representations were claimed to have been made, neither J. J. Arnold nor J. J. Arnold Company had any interest in the Pittsburgh coal underlying the Tokas land. It is hardly conceivable that a grantor to surface of land would represent that the surface would not be disturbed by strip mining, when, as a matter of fact, he knew that the right to mine by stripping existed in third parties and that he, himself, had no interest whatever in the coal or mining rights. Moreover, at the time this case was tried in the circuit court, J. J. Arnold was dead and the Tokas deeds were prepared by a lawyer of unquestionable integrity who, according to plaintiffs' own testimony, represented both grantor and grantees. Under the circumstances, the Tokas testimony as to misrepresentation and fraud, in contradiction of the unequivocal language of the reservations and exceptions contained in their deed, is neither clear nor convincing. This Court will reverse a trial court

where, as here, the record discloses that his findings are clearly wrong or against the preponderance of the whole evidence. *Buskirk* v. *Bankers Finance Corporation,* 121 W. Va. 361, 3 S. E. (2d) 450; *Pickens* v. *O'Hara,* 120 W. Va. 751, 200 S. E. 746; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Gall, Receiver,* v. *Cowell,* 118 W. Va. 263, 190 S. E. 130; *Smith* v. *Pew, Executor,* 116 W. Va. 734, 183 S. E. 53; *Wood* v. *Snodgrass,* 116 W. Va. 538, 182 S. E. 286.

However, plaintiffs' counsel further asserts that the J. J. Arnold Company has not compiled with the provisions of the Acts, West Virginia Legislature, 1939, Chapter 84. This act requires that as a condition precedent to strip mining a permit shall be obtained from the chief of the mining department and bond given to secure the replacement of the earth removed during the course of stripping. This Court can and does take judicial notice of the statute, though it is neither pleaded nor proved. However, the bill of complaint does not allege non-compliance with the statute and, of course, reliance upon it cannot be had in this Court. Compliance or non-compliance with a statute, in the absence of stipulation, must be established by both pleadings and proof. It is to be noted, however, that not until on and after January 1, 1941, will the statute apply to all strip mining in this State. See Section 3.

For the foregoing reasons the decree of the trial court in granting the permanent injunction is reversed and this cause remanded for such proceedings as plaintiffs may be advised in view of the provisions of West Virginia Acts of the Legislature, 1939, Chapter 84.

*Reversed and remanded.*