Clearfield Development Corporation *v.* Devonian Gas & Oil Company, Appellant.

Argued April 19, 1956.   Before STERN, C. J., BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William F. Beatty*, with him *Henry M. Hipple* and *James F. Smith*, for appellant.

*Morris Klewans*, with him *Saylor J. McGhee, Jr.*, for appellee.

Opinion by Mr. Justice Arnold, May 21, 1956:

In this action of assumpsit founded upon written contracts, defendant appeals from judgment entered for plaintiff upon the pleadings.

Prior to entering into these contracts, defendant had leased from the Commonwealth certain lands for production of oil and gas. In compliance with a requirement of the lease, defendant had filed bond for performance and also had deposited with the bonding company as collateral the sum of $25,000.

Defendant had commenced drilling operations when it entered into the contracts with plaintiff. They recited that defendant was the *"owner"*[1] of the oil and gas, and provided, inter alia, that for a consideration plaintiff purchased from defendant "an undivided one-eighth (1/8) interest in the *net proceeds* from the *sale* of any oil or gas"; and that the "net proceeds shall consist of the sums received from *sales* of oil or gas . . ., less . . . royalties . . . and the cost of managing, operating and marketing the same." They also provided that defendant would "undertake to drill this well at its own cost and expense."

The wells having produced, defendant proceeded to make payments, but deducted from gross receipts the sum which it had deposited as collateral to the performance bond. The share thus withheld from plaintiff was $3,125, for which this suit was brought.

With some exceptions, we must construe the written contract to give it the meaning that would be attached to it by a reasonably intelligent person acquainted with all operative usages, and knowing all the circumstances prior to and contemporaneous with the making of the contract: *Markides v. Soffer,* 172 Pa. Superior Ct. 215, 218, 93 A. 2d 99; Restatement, Contracts, §230. Where

---

[1] Italics throughout are ours.

the words bear more than one reasonable meaning they shall be interpreted most strongly against the one from whom they proceed,[2] unless their use by him is prescribed by law: *Markides v. Soffer*, supra; see also *Kormuth v. United States Steel Company*, 379 Pa. 365, 369, 108 A. 2d 907; certiorari denied, 349 U. S. 911.

It is to be noted that the deposit was made as a part of the lease before the contracts in question were entered into by these parties; and the deductions provided in the contracts applied to the *"sums received* from sales . . . less . . . cost of . . . operating the same . . ."* These deductions specifically were not to include costs of drilling; nor were any costs or outlays required by the leasehold referred to in any way. In fact, it was declared that defendant then *owned* the oil and gas.

Normally, net earnings are the product of the business, deducting *expenses* only: *Commonwealth v. Phila. & Erie R. R.*, 164 Pa. 252, 260, 30 A. 145. The "cost of operation" here could mean only those charges or items of expense inseparably connected with the productive end of the business. With the defendant asserting unequivocally that it "owned" the oil and gas, no reasonably intelligent person could be deemed to understand that this deposit required in the obtaining of the lease was a part of the expense in operating the wells or selling the gas or oil. He could consider it to include only items of a productive nature attached to the operation of a well in being and in production.

This item was not an "expenditure" or "cost," but solely an overhead charge,—a nonproductive or indirect charge,—which was part of its capital outlay, and for which it alone was responsible.

Furthermore, it was not an expenditure or charge or cost, in the real sense. Defendant did not uncondition-

---

[2] There was no effective averment in the pleadings as to who prepared the instrument.

ally part with it, but deposited it solely as security for performance. With completion of and compliance with the terms of its lease with the Commonwealth, defendant will obtain the money for its own use and disposition. It cannot charge the deposit to operating cost, any more than it could charge payments of interest on loans secured to obtain the lease or to purchase labor and materials for the drilling of the well. None of these items entered into the cost of operation. Cf. *Lytle, Campbell & Co. v. Somers, Fitler & Todd Co.*, 276 Pa. 409, 413, 414, 415, 120 A. 409.

Judgment affirmed.