## Wilkes-Barre Township School District, Appellant, v. Corgan.

384

Argued January 9, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

rear-
gument refused May 18, 1961.

*Gifford Cappellini,* with him *Thomas C. Moore,* for appellant.

*Michael H. Sheridan,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 23, 1961:

The appellant, the Wilkes-Barre Township School District, sued the defendant, John B. Corgan, to recover for intentional damage to the surface of land resulting from trespass and deep excavations thereon by the defendant. Preliminary objections to the complaint in the nature of a demurrer were sustained by the court below, and judgment entered for the defendant. The plaintiff appeals.

For the purposes of this appeal every well-pleaded, material, relevant fact, and every inference fairly deducible therefrom must be accepted as true: *Byers v. Ward,* 368 Pa. 416, 84 A. 2d 307 (1951).

On January 13, 1893, by deed from the Lehigh and Wilkes-Barre Coal Company, the plaintiff, the Wilkes-Barre Township School District, became "the owner" of the "surface and right of soil" of certain land in Luzerne County. The deed discloses that it accepted and reserved to the grantor, ownership in the coal and other minerals in, under and upon the land, and

also the right and privilege of removing the same. The grantor was given the right to make and drive tunnels and passageways under the surface for the purpose of mining. The deed also stipulated, inter alia, that the grantor would not, in any event, incur liability for any injury to the surface of the land or improvements thereon, by reason of the mining and removal of the coal or minerals, and did not guarantee lateral or vertical support.

In April 1959, the defendant, John B. Corgan, a successor in title to the Lehigh and Wilkes-Barre Coal Company, without the permission or knowledge of the plaintiff, Wilkes-Barre Township School District, moved heavy machinery, consisting of draglines, onto the surface of the land and began operations digging up the earth and soil. As a result, the surface was disheveled and soil was removed, leaving a hole or a crevice one hundred and fifty feet in depth. These facts constitute a cause of action and the lower court erred in summarily entering judgment for the defendant.

The basic issue revolves around the proper interpretation of the terms of the deed involved. In construing a deed or a contract, certain general principles must be kept in mind. First, it is the intention of the parties *at the time of entering in thereto that governs,* and such intention is to be gathered from a reading of the entire contract: *P. M. & Co. v. Stephano Bros.,* 331 Pa. 278, 200 A. 605 (1938) ; *Maxwell v. Saylor,* 359 Pa. 94, 58 A. 2d 355 (1948). In addition, " 'Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. (Citing cases). Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which

makes it fair, customary, and such as prudent men would naturally execute, *while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.*[1] If one construction would make it unreasonable, while another would do justice to both parties, the latter will be adopted' ": *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 287, 54 A. 2d 35 (1947). It is also beyond controversy, that a written document must be construed most strongly against the parties drafting it: *Cities Service Oil Co. v. Haller*, 393 Pa. 26, 142 A. 2d 163 (1958). It is equally well fixed in the law that a doubtful reservation or exception in a deed will be construed most strongly against the grantor and in favor of the grantee: *Bundy v. Myers*, 372 Pa. 583, 94 A. 2d 724 (1953); *Sheffield W. Co. v. Elk T. Co.*, 225 Pa. 614, 74 Atl. 742 (1909). This rule applies with special force to a reservation or exception which amounts to a cutting down of the grant: *Klaer v. Ridgway*, 86 Pa. 529 (1878).

The deed in issue "granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed . . ." to the grantee "the surface and right of soil" of the land involved. These words were effective in passing and transmitting the entire title to the "surface." See, Act of May 28, 1715, 1 Sm. L. 94, §6, 21 PS §8, as amended. Other jurisdictions also so hold: *Crookshanks v. Ransbarger*, 80 W. Va. 21, 92 S.E. 78 (1917); *McQuiddy Printing Co. v. Hirsig*, 23 Tenn. App. 434, 134 S.W. 2d 197 (1939). The term "surface," when used in law, is seldom, if ever, limited to mere geometrical superficies. Where, however, the surface is granted to one and the underlying coal to another, the "surface" includes whatever earth, soil or land which

---

[1] Emphasis ours.

lie above and is superincumbent upon the coal: *Clinchfield Coal Corp. v. Compton,* 148 Va. 437, 139 S.E. 308 (1927); *Stonegap Colliery Co. v. Hamilton,* 119 Va. 271, 89 S.E. 305 (1916). Therefore, the grantor conveyed complete title and right of possession in and to the soil and earth resting upon the coal. But, title to the coal with the right ₁to remove it remained in and was reserved to the grantor. These facts are clearly established by the language of the deed. As to the method to be employed in the removal of the coal, that is something again. What did the parties contract in regard to this? How did they intend that this would be accomplished? Did they contemplate that, by virtue of the stated mining rights, the grantor was entitled to occupy the surface, mine the coal by intentionally removing and destroying the soil overlying it? This is the pivotal question and the answer is not specifically spelled out in the deed. Nor is there language from which the same may be implied. To conclude that such extraordinary rights were reserved and intended, one must necessarily read into the deed an intent that is just not there. Such a construction would violate every principle of law we have hereinbefore enunciated. It would amount to construing the reservation in favor of the grantor, stretching it and adding substantially thereto. It would be an unreasonable interpretation; one grossly inequitable and of a nature well meaning men would not likely bargain for. It would be inconsistent with the grant itself. Further, the standard of interpretation to be applied is the meaning that would be attached by a reasonably intelligent person, *acquainted with all operative usages, and knowing all the circumstances prior to and contemporaneous with the making of the contract*: Restatement, Contracts §230; *Clearfield Dev. Corp. v. Devonian Co.,* 385 Pa. 248, 122 A. 2d 718 (1956). The excavations carried out in this case

were, undoubtedly, those incident to strip mining. Such operations were never heard of in the hard coal field until recent years. Can anyone reasonably contend that in the year 1893, when this deed was executed and delivered, that the parties contemplated or intended that the surface of the land would be strip mined? We do not believe this to be so.

What the parties manifestly intended was that the coal was to be removed by the method then known, and accepted as usual and commonplace. This was vertical tunnel, or shaft mining. Needless to say, the nature and consequences of strip mining are vastly different: *Tokas v. J. J. Arnold Co.*, 122 W. Va. 613, 11 S.E. 2d 759 (1940). If what the defendant asserts was intended, the deed should have clearly said so: *Commonwealth v. Fisher*, 364 Pa. 422, 72 A. 2d 568 (1950); *Evans Fuel Co. v. Leyda*, 77 Col. 356, 236 P. 1023 (1925). If any such rights were intended and reserved, then every public and private building in the anthracite coal region[2] could be demolished, the surface ravaged, and the entire area levelled in ruin and desolation. Surely, no court of law should construe a writing to effectuate such consequences, unless the terms thereof are unmistakable and beyond doubt.

This issue is akin to that presented in *Rochez Bros., Inc. v. Duricka*, 374 Pa. 262, 97 A. 2d 825 (1953). Therein this Court held that a deed containing reservations of a similar nature, including the liability-saving clause, in the event of damage to the surface resulting from the removal of the coal, applied only to shaft, or vertical mining, because the deed demonstrated that such was the intent of the parties to the contract. The deed and surrounding circumstances in

---

[2] Nearly every deed in this area involves a severance of coal and surface right, containing similar provisions to deed under consideration.

this case are equally demonstrative that vertical mining, and that only, is what the parties were thinking of, intended and contracted for. That in *Rochez*, supra, a larger tract of land in a farming area was involved, whereas in this case, it is a small area of land in an inhabited area, does not militate against our interpretation of the contract. If anything, it more strongly supports our conclusion. See also, *Barker v. Mintz*, 73 Col. 262, 215 P. 534 (1923); *Oresta v. Romano Bros.*, 137 W. Va. 633, 73 S.E. 2d 622 (1952); *West Virginia-Pittsburgh Coal Co. v. Strong*, 129 W. Va. 832, 42 S.E. 2d 46 (1947). In the latter case where the deed of severance reserved the right of full and free ingress and egress in, on, beneath and over the land for the purpose of mining, excavating, shipping and removing coal, it was held that this reservation did not include the right to destroy and remove the surface overlying the coal.

The cases of *Commonwealth v. Fisher*, 364 Pa. 422, 72 A. 2d 568 (1950) and *Commonwealth v. Fitzmartin*,[3] 376 Pa. 390, 102 A. 2d 893 (1954), are distinguishable. In the former the deed specifically reserved to the grantor "the full, free, absolute and exclusive right and authority . . . to dig, excavate or penetrate any part of said premises". No such right was reserved in the deed involved herein. In *Commonwealth v. Fitzmartin*, the land concerned was a tract of unimproved, hilly, rocky, mountainous terrain of approximately 3471 acres. The land was acquired by the Commonwealth at a nominal price as an area for the conservation, protection and propagation of wild life. The deed specifically reserved to the grantor " 'the exclusive and perpetual right of ingress, egress and regress into and upon the said lands to examine, search for, mine, manufacture and prepare said coal, oil, gas

---

[3] Even in this case the language was considered equivocal by three of the seven Justices who dissented.

and other minerals for market, . . . to build and construct shafts, drifts, air shafts, bore holes, gangways, headings, roads and drains in, through, upon and under said surface; to pump water from the mines and run same on said surface; to locate and erect such fans, engines, machinery, buildings, shafts, drifts, and other structures, with the necessary curtillage, as may be necessary for the . . . working of the mines and works appurtenant thereto . . .; to use sufficient and convenient portions of the surface' " for the construction of buildings thereon "without any liability whatsoever for damages to said lands." The reservations in the deed before us are clearly dissimilar and not nearly so all-encompassing as to the use of the surface of the land by the grantor and its successors in title.

The judgment of the lower court is reversed with a procedendo.

---

DISSENTING OPINION BY MR. JUSTICE BENJAMIN R. JONES:

In my opinion, the present issue is determined by our ruling in *Commonwealth v. Fitzmartin,* 376 Pa. 390, 102 A. 2d 893. I believe that decision was correct and therefore I dissent.

Mr. Justice BELL joins in this dissenting opinion.