## Grubb *versus* Grubb.

A. & B. were owners, as tenants in common, of certain property known as the Mount Hope Furnace estate, and also of an undivided one-sixth interest in certain mine hills called the Cornwall Ore Banks, each having a right to an unlimited supply of ore from these banks, for his interest in the Mount Hope Furnace. By deed dated October 29th 1845, B. conveyed to C., his interest in the Mount Hope Furnace estate, " together also with the right, title and interest, so far as the said C.'s right under this conveyance, in said Mount Hope Furnace, is interested and concerned, of them the said B. and wife to raise, dig up and carry away for the use and advantage of said Furnace, iron ore out of and from " said Cornwall Ore Banks. C. subsequently became sole owner of the furnace; and in a suit by B. against C. to recover for one-half the ore taken by C. from the ore banks, for supplying his furnace in full, after he became sole owner: *Held*, that under B.'s conveyance to C. the latter was entitled to a full supply of ore for the Furnace from the Cornwall Ore Banks; instead of a one-half supply, as was claimed by B.

May 19th, 1882.    Before MERCUR, GORDON, PAXSON, TRUN-KEY, STERRETT and GREEN, JJ.    SHARSWOOD, C. J., absent.

ERROR to the Court of Common Pleas of *Lancaster county:* Of January Term 1882, No. 108.

Assumpsit, by Clement B. Grubb against Alfred Bates Grubb, to recover the value of one half of 13,637 1-2 tons of iron ore, taken by the defendant from the Cornwall Ore Banks, for the purpose of supplying his furnace.

By agreement of counsel the case was submitted without a jury. The court, LIVINGSTON, P. J., found the following facts: In 1845 Clement B. Grubb and Edward B. Grubb were owners in fee as tenants in common in equal interests, of a certain property in Lancaster county known as the Mount Hope Furnace property; and they also each held in fee an undivided one-twelfth interest in the Cornwall Ore Banks situate in Lancaster and Lebanon counties, from which banks each had the right to an unlimited supply of ore for his interest in the Mount Hope Furnace.

By deed dated October 29th 1845, Clement B. Grubb and wife, in consideration of $25,000, sold and conveyed to Alfred B. Grubb, a younger brother, " all the one equal undivided half part or moiety of them the said C. B. Grubb (the plaintiff) and Mary A. Grubb his wife, of, in, and to the Mount Hope Furnace estate, now owned in common and equal interest by and between the said C. B. Grubb and E. B. Grubb, consisting of a furnace, mill, dwellings, and several tracts of land (each tract being described separately and the improvements thereon noted in said deed), together also with the right, title, and interest, so far as the said Alfred Bates Grubb's right under this conveyance in said Mount Hope Furnace is interested and concerned, of them

the said C. B. Grubb and Mary Ann Grubb his wife, to raise, dig up, take, and carry away, for the use and advantage of said furnace, iron ore out of and from three certain mine hills in Lebanon township, Lebanon county, bounded on all sides by lands of Thomas B. Coleman, deceased, and known and called by the name of 'Cornwall Ore Banks,' and held as a tenancy in common with the heirs of Thomas B. Coleman and James Coleman, deceased, with ingress and egress to and from the said mine hills and every part thereof for the purpose only of procuring ore for said Mount Hope Furnace, but for so long and for such time only as the said furnace can be carried on and kept in operation by means of charcoal."

"To have and to hold the said one equal undivided moiety or half part of, in, and to the said furnace, mills, houses, barns, buildings, improvements, lands, and premises above mentioned and described, hereditaments and premises hereby granted, with the appurtenances and with the right of ore as aforesaid, unto the said A. Bates Grubb, his heirs and assigns, to the only proper use and behoof of the said A. Bates Grubb, his heirs and assigns forever, clear, free, and forever discharged of and from any and all liens and incumbrances whatsoever."

In the same year, 1845, E. B. Grubb and A. B. Grubb formed a partnership for carrying on the Mount Hope Furnace, and from the death of E. B. Grubb in 1867, until 1873, A. B. Grubb carried on the business for himself and the heirs of E. B. Grubb. The ore for the furnace was taken from the Cornwall Ore Banks, and from 1864 to 1873 it was raised by a company called the Cornwall Ore Bank Company, one half the cost of raising being paid by A. B. Grubb, and the other half by E. B. Grubb or his heirs.

The Supreme Court, in Grubb *v.* Grubb, 24 Smith 25, decided that under this deed of October 29th 1845, A. B. Grubb took in fee the interest of Clement B. Grubb in the Furnace property, but did not take an estate in the Ore banks, his interest in them under the deed being simply the right to take out ore, and the court therefore held that as between the heirs of E. B. Grubb and A. B. Grubb, partition could only be made of the Mount Hope property.

After the proceedings in partition had been completed, A. B. Grubb took the interest of the heirs of E. B. Grubb in this property at a valuation agreed upon, and thereby became owner in fee of the entire Mount Hope Furnace property. He made no provision for a supply of ore from the Cornwall Ore Banks so far as his enlarged interest in the furnace obtained from E. B. Grubb's heirs was concerned.

After becoming sole owner of the furnace A. B. Grubb took the whole supply of ore necessary to keep it in blast, from the

[Grubb *v*. Grubb.]

Cornwall Ore Banks. This amounted to 13,632 1-2 tons, to recover the value of one-half of which this action was brought by Clement B. Grubb, who contended that under the deed of October 29th 1845, A. B. Grubb was entitled to take from the ore banks but one half the supply of ore necessary to operate the Mount Hope Furnace, and only so long as charcoal was used to keep it in operation.

A. B. Grubb, on the other hand, asked the court to rule that under said deed, he was entitled to a full supply of ore from the Cornwall Ore Banks, for the Mount Hope Furnace, while kept in blast by means of charcoal. The court held, however, that the deed granted to A. B. Grubb but a one half supply, and directed the Prothonotary to enter judgment for the plaintiff in the sum of $17,345, with costs, being the amount claimed. Whereupon A. B. Grubb took this writ assigning for error the finding of the court and entry of judgment as above.

*Wayne Mac Veagh* and *A. Slaymaker* (with whom was *Samuel H. Reynolds*), for plaintiff in error.—The case turns on construction of the words of the deed, "so far as the said Alfred Bates Grubb's interest in the Mount Hope Furnace is interested and concerned;" and the question is, how far was his undivided one half interest in the furnace concerned, in the right to dig ore at the time of the conveyance? Obviously it was interested and concerned to the extent necessary to give it its full value; that is, to the extent of a right to a full supply of ore. In 1845, in the absence of railroads, the furnace and ore banks were mutually dependent on each other for their value; and ever since 1785 the Mount Hope Furnace has been supplied from the ore banks without any question. For these reasons the ownership of the Ore Banks has always been regarded as appurtenant to the different furnace properties. The fact that when the grantee operated the furnace in partnership with his brother Edward B. Grubb, who owned the other half, each partner furnished one half the ore used, is certainly no evidence of such a contemporaneous construction of the deed as is contended for by the defendant in error; because, at that time the partners took ore for the furnace from the Mount Hope hole, with men and teams owned by the firm, and no account whatever was taken of the ore either as between the partners, or as between the firm and the proprietors of the ore banks. The deed must be construed most strongly against the grantor: Klaer *v*. Ridgway, 5 Nor. 529; Connery *v*. Brooke, 23 P. F. S. 80; Richardson *v*. Clements, 8 Nor. 523.

*D. W. Sellers* and *H. M. North* (with whom were *Thos. E. Franklin* and *George M. Kline*), for defendant in error.—The

words "so far as . . . . is interested and concerned," limit and restrict the supply of ore granted by the deed of 1845, to the grantee's interest in the Mt. Hope Furnace. These words were put in the deed for some purpose, and a meaning must be given them. They were not meant to enlarge the grant, which would be perfectly clear without them ; but were undoubtedly intended to limit the grant of ore to the grantee's interest in the furnace—which was one-half. The parties to the deed were contracting about one-half a furnace, and the supply of ore for that half—not about an entirety of anything. Alfred bought Clement's right to one-half of the furnace, and the right to ore for this half, and he thereby acquired an equal position with his partner Edward, who owned the other half of furnace and supply. In other words, Edward furnished ore " so far as his interest in the Mt. Hope Furnace was interested and concerned," and by his purchase Alfred acquired the right to ore—"so far as his interest in said furnace was interested and concerned," viz. : to a one-half supply.

Mr. Justice PAXSON delivered the opinion of the Court, October 2d 1882.

This record presents for our consideration the proper construction of the deed of October 29 1845, from Clement B. Grubb & wife to Alfred Bates Grubb for an undivided moiety of the property known as the Mount Hope Estate, consisting of a furnace, grist-mill, saw-mill, dwelling-houses, barns, and other buildings. The only question about which there is any dispute is the extent of the right of the grantee in the deed to take iron ore from the Cornwall Ore Banks for the use of the Mount Hope Furnace. The clause in said deed bearing upon this subject is as follows : " Together also with the right, title and interest, so far as the said Alfred Bates Grubb's right under this conveyance in the said Mount Hope Furnace is interested and concerned, of them the said Clement B. Grubb and Mary Ann Grubb his wife, to raise, dig up, take and carry away for the use and advantage of said furnace, iron ore out of and from three certain mine mills in Lebanon Township, Lebanon County, bounded on all sides by lands of Thomas B. Coleman, deceased, and known and called by the name of the ' Cornwall Ore Banks,' and held as a tenancy in common with the heirs of Thomas B. Coleman and James Coleman, deceased, with ingress egress and regress to and from the said mine hills, and every part thereof, for the purpose only of procuring ore for the said Mount Hope Furnace, but for so long and for such time only as the said furnace can be carried on and kept in operation by means of charcoal."

The precise question for our determination is, whether under

this deed, Alfred Bates Grubb is entitled to a full supply of ore for his furnace, or only a half supply. The court below ruled that he had a right to a half supply only.

The construction of this deed was before this court in Grubb v. Grubb, 24 P. F. S. 25, where it was held that it conveyed to Alfred a privilege to take ore from the Cornwall Ore Banks for the use of Mount Hope Furnace, but did not convey the corporeal estate in the mine hills ; that remained in Clement. The extent of the right to take ore was not before the court. But to the extent the right exists it passed by the deed of Clement B. Grubb to the interest he conveyed in the Mount Hope Estate, and will pass with it as appurtenant thereto.

What was the intention of the parties to the deed and what did they mean to convey ? This intention may be ascertained in one of two ways : 1. From the words of the grant, and if they are ambiguous ; 2. From surrounding circumstances ; and in this connection the position of the parties and the property at and subsequent to the transaction may be considered.

1. The words of the grant are not free from ambiguity so far as the ore right is concerned. All else is clear enough. The deed conveys an undivided moiety in the Mount Hope Estate. It is equally plain that the ore right, whatever may be its extent as to quantity, is limited as to time. It ceases when the furnace can be no longer operated with charcoal. The obscurity in the language of the deed is caused by the words " so far as the said Alfred Bates Grubb's right under this conveyance in the said Mount Hope Furnace is interested and concerned." If we omit these words the deed would read : " Together also, with the right, title and interest . . . . of them, the said Clement B. Grubb & Mary Ann Grubb, his wife, to raise, dig up, take and carry away, for the use and advantage of said furnace, iron ore," &c. This would give a full supply for the reason that Clement was entitled to a full supply for said furnace, and having granted that right without restriction, his grantee would have the same privilege.

It was argued that as Clement was granting but a moiety or half interest in the Mount Hope Estate, he intended to grant but a half supply of ore. This does not follow. The deed expressly declares that he grants but a moiety of the Mount Hope Estate, but nowhere does it limit in terms the ore right to a half supply. If such had been the intention of the parties it was an easy matter to have so expressed it. It must be remembered that we are considering the written contract of intelligent men, who understood the use of language and knew how to impose a limitation or restriction upon a right that was being granted. Just here the defendant in error has to contend with the well settled rule that a deed or grant must be construed most strongly

[Grubb *v.* Grubb.]

against the grantor. It was said, in Klaer *v.* Ridgway, 5 Norris 529, that this rule applies with especial force to a reservation or restriction in a deed whereby there is a withholding of something from the grant. The onus of showing that the furnace is entitled to a half supply only rests upon the defendant in error. He asserts a restriction upon the grant, and must show it. I have already said that no such restriction appears in terms upon the face of the deed. If we call to our aid in its construction the circumstances surrounding the parties at the time the deed was executed, it does not help the defendant. The Cornwall Ore Banks have appreciated enormously in value since that day, and the consumption of ore has increased correspondingly. It is not probable that in 1845 the possibility of the ore in the banks becoming exhausted had ever occurred to any one interested therein. The ore banks were evidently regarded as appurtenant to the different furnaces which had been from time to time erected by the respective owners. Before the days of railroads these furnaces gave to the ore banks their chief value, just as the furnaces were practically worthless without the banks to supply them with ore. The enormous development in the manufacture of iron consequent upon the use of anthracite coal, the hot-blast, steam power, and other improvements, had not then taken place. So far as these furnaces are concerned the quantity of ore was sufficient to keep the old charcoal furnaces in operation for centuries, and was probably so regarded by the parties. Each took from the banks all the ore he needed for his furnaces, and no account was made of it. That this was so at the date of the deed appears distinctly from the answer of Clement B. Grubb, the defendant in error, to the bill of partition in 1850, five years later. Keeping to the stand-point of 1845, it would seem to have been a matter of small moment to the grantor, when he came to convey his half interest in the Mount Hope Furnace to his younger brother, whether he granted with it a full or a half supply of ore. Is it reasonable to suppose that a half supply was in the mind of either ? If they intended a half supply only, where was the other half to come from ? There were no railroads then, as now, by which ore could be brought from other mines. The furnace was wholly dependent upon the Cornwall ore. There was no agreement on the part of Clement to sell the other half supply at a fixed price, or at any price. What does a half supply of ore mean ? Does it mean that the furnace shall be operated half the year, or that it may be operated all the year, and half the ore be paid for or procured elsewhere ? Situated as these parties and the property were in 1845, it seems incredible they should have intended a half supply only, and yet have left all these matters wholly unprovided for. It was very easy, if a half supply had been intended, to have said so.

[Ake v. Mason.]

The learned judge below seems to have been influenced to some extent by the idea that there was evidence of a contemporaneous construction of the deed by the usage of the grantee inconsistent with his present contention. We do not so regard it. It is true that during a portion of the time the grantee operated the furnace in partnership with his brother, Edward B. Grubb, who owned the other half of the furnace property, each paid one half of the cost of mining the ore. This was after 1864. Prior to that time the plaintiff in error (grantee) and his brother mined their own ore, and took it away with their own teams, in such quantities as suited them, without accountability to any one. Subsequently to 1864 a different arrangement was in force. By an agreement of the proprietors of the ore banks, the ore was mined by a superintendent, and the cost of mining charged to the person who consumed the ore. Alfred Bates Grubb was not a member of this company, and had nothing to do with it. The ore then used for Mount Hope Furnace was charged, one half to his partner, Edward B. Grubb, and the other half to his grantee, Clement B. Grubb. The cost of mining was properly paid by the partners equally. We can see nothing in this which conflicts with the present claim of the plaintiff to a full supply of ore.

We need not pursue the subject further. The defendant in error has failed to convince us that his construction of the deed is the proper one. It follows that he has no cause of action.

Judgment reversed.