## Miles, Appellant, *v.* The New York, Susquehanna & Western Coal Company.

*Mines and mining—Coal lease—Construction—Waiver of surface support—Removal of coal—Pillars—Equity.*

1. A deed or grant must be construed most strongly against the grantor. This applies with especial force to a reservation or restriction in a deed, whereby there is a withholding of something from the grant, and this rule applies to a mining lease.

2. A stipulation in a mining lease for careful and skilful mining relates only to the manner of working the coal, and does not impose upon the operating company the duty of supporting the surface.

3. Upon an application for an injunction to restrain the lessee under a certain coal lease from removing pillars of coal which were needed to support the surface, it appeared ·that the lease granted "all the coal and veins of coal upon the property," and was to continue "for and during such period and term as shall be required in order to mine, prepare and carry away all the merchantable and marketable coal in, under and upon the said tract of land," and that the lessee covenanted that he would mine and pay for all the coal under the tract, and was given the right to remove breakers, machinery, etc., after all the coal had been mined, and further contained express exemption of the lessee from the consequences of injury done to the surface of the ground, unless such damage resulted from "wilful misbehavior or gross negligence." There was no contention that there had been negligence

148 MILES, Appellant, v. NEW YORK, S. & W. COAL CO.

in the method of mining, but it was contended that a clause in the lease providing that pillars should be left, sufficient to support the roof, "so that at the expiration of the term of this lease from whatever cause, the mines and improvements shall be left in as good order and condition for future mining as any prudent operator would leave the same were he entitled to continue mining for a series of years," made it the duty of the lessee to leave the pillars of coal in controversy. The court decided (1) that the grant carried with it the right to remove all the coal under the tract, of whatever kind; (2) that the stipulation for leaving pillars in the event of a termination of the lease had reference exclusively to a determination prior to the removal of all the coal, so that future mining operations could be conducted, and dismissed the bill. *Held,* no error.

Argued Feb. 23, 1915. Appeal, No. 302, Jan. T., 1914, by plaintiffs, from decree of C. P. Lackawanna Co., Jan. T., 1905, No. 7, in equity, refusing an injunction, in case of Julia M. Miles, Louise E. Dorr, E. M. Smith, Margaret Dorr, Mary Dorr, J. Frank Smith, T. B. Smith, Mame A. Smith, Howard Smith, Edward W. Stark, Conrad S. Stark, John D. Stark, devisees of Conrad S. Stark, and Edward W. Stark, John D. Stark and Joseph W. Kasper, trustees of the estate of Georgea M. Stark, deceased; Elizabeth A. Mosier, James H. Mosier, and F. C. Mosier, D. T. Miles, J. Frank Smith and T. B. Smith, Executors of Anna B. Smith, deceased; E. M. Smith, surviving executor of the estate of Erastus Smith, deceased; Franklin C. Mosier, administrator d. b. n. of estate of John B. Mosier, deceased; Franklin C. Mosier, executor of estate of Elizabeth A. Mosier, deceased, v. The New York, Susquehanna & Western Coal Company, Joseph Jermyn, surviving partner of the firm of Jermyn & Company; Edward A. Sibley, Samuel K. Felton, Hunter Brooke, Harold M. McClure, surviving partners of Elliot, McClure & Company, H. C. Reynolds and H. M. Neeld, executors of estate of Arminda Neeld, widow of Erastus Smith, deceased; Hulda A. Drake. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to report of John P. Kelley, Esq., referee.

The opinion of the Supreme Court states the facts.

The referee recommended that the bill be dismissed.

The court dismissed exceptions to the report of the referee and entered a decree in accordance with his recommendations.   Julia M. Miles, appealed.

*Error assigned,* among others, was the decree of the court.

*John G. Johnson,* with him *J. Q. Creveling,* for appellants.

*Everett Warren,* of *Warren, Knapp, O'Malley and Hill,* and *Welles and Torrey,* for appellees.

*H. C. Reynolds* for the surviving executor and Trustee of the estate of Arminda Smith Neeld, widow of Erastus Smith, deceased, appellee.

OPINION BY MR. JUSTICE POTTER, July 3, 1915:

The question here presented for determination is whether under the terms and provisions of a certain lease of coal lands, the lessee acquired the right to mine and remove all the coal on the premises, including that composing certain pillars, which during the course of mining operations, had been left to support the roof. The coal contained in these pillars amounts to a considerable proportion of the whole.   The plaintiffs in this case, representing in part the owners in fee of the land, which is the subject of the lease, filed this bill in equity to restrain the defendants from removing these pillars, which under the terms of the lease the defendants claim they are entitled to remove, after all the other available coal upon the leased premises has been mined, and the pillars are no longer needed to protect the mining operations.   This case was by agreement submitted to a referee, who sustained the contention of the defendants,

and in his report recommended that the bill be dismissed. The court below overruled the exceptions to the findings of the referee, and confirmed his report, and entered a final decree dismissing the bill. Plaintiffs have appealed. The assignments of error raise but one question, which is, whether under the terms of the lease, the defendants are entitled to remove all the coal upon the leased premises, without leaving sufficient pillars to support the surface. An examination of the lease shows that it included all the coal. The demise is of "all the coal and veins of coal upon the property." The lease was to continue "for and during such period and term as shall be required in order to mine, prepare and carry away all the merchantable and marketable coal in, under and upon the said tract of land." The lessee covenanted that he would "mine, take away and pay for......all the merchantable and marketable coal in, under and upon the tract of land hereby leased." He was to have the right to remove all the breakers, machinery, etc., from the property "after all the coal in and under said tract shall have been mined and removed from said premises." In addition to this, the lease contained an express exemption of the lessee from the consequences of injury done to the surface of the ground. It provided "that the said party of the second part shall not be liable unto the said party of the first part, his heirs, executors, administrators, or assigns, for any injury to or falling in of the surface of said land in consequence of mining or removing said coal, or of making tunnels, drifts or other openings into the same, unless such damage result from the willful misbehavior or gross negligence of the said party of the second part, his agents or employees." The referee found as a fact that the defendants had not been guilty of misbehavior or negligence within the meaning of the lease. In Miles v. Pennsylvania Coal Co., 217 Pa. 449, provisions in a mining lease, very similar to those now before us, were construed. We find nothing in the present record which would justify a different conclusion

from that which was reached in that case. We there said, speaking by our Brother MESTREZAT, in terms equally applicable here, (p. 454) : "It is apparent, we think, from these brief excerpts from the lease, that the intention of the lessors in entering into the contract was for the purpose of having the entire body of their coal mined and removed so that they could realize upon it; and that this was to be done without regard to the effect of the mining operations upon the surface. The contract grants in terms all the coal, with the right to mine and remove it.....Read in connection with the stipulations in the lease granting the right to remove all the coal, this covenant against liability for injury to any part of the surface arising from the act of mining and removing all of the coal is conclusive against the contention of the lessors that the lessee is required under the lease to leave pillars or any part of the coal for the support of the surface." Emphasis was also there placed upon the fact that the lease then under consideration granted "unlimited surface rights." Equally broad are the rights in the surface which are given to the lessee in the present case. He was at liberty to make any necessary use of the surface for opening up shafts or tunnels, or for locating air-shafts, machinery, breakers, buildings, stables, and all other improvements convenient and necessary for carrying on the mining and preparation of the coal upon said tract. He was given the use of as much of the surface, not exceeding one-third, as might be needed for the erection of stores and houses for miners and other employees. Also other extensive rights for cutting and using timber. We think the referee was fully justified in holding that in this case the right of support was waived by the lessor, and that as a consequence, the lessee was entitled to take all the coal from the mine, including that in the pillars, which have been left from time to time during the process of mining, for the purpose of sustaining the roof and the surface of the ground. Counsel for appellants lay great stress upon

another provision of the lease, which stipulates that "mining operations shall be conducted throughout in a workmanlike manner, and pillars shall be left of such size and number as shall be necessary to support the roof, and the mining and removing the coal in each vein shall be so conducted as not to injure or interfere with the mining or removing of coal from any other vein, either overhanging or underlying; so that at the expiration of the term of this lease from whatever cause, the mines and improvements shall be left in as good order and condition for future mining as any prudent operator would leave the same were he entitled to continue mining for a series of years." It is urged that under this paragraph at the expiration of the lease, no matter whether all the other available coal be worked out or not, the lessee is bound to leave pillars sufficient to support the roof. The referee held, however, that this stipulation as to leaving the mines in good condition for future mining, referred only to such termination of the lease as might for some sufficient reason, take place before all the coal upon the premises was mined, and "that it was the proper preservation of the colliery as a going concern during the course of mining, that was intended to be safeguarded by this clause, so that ultimately the greatest quantity of coal could be won." We think this was a fair and reasonable construction of the clause. It will be noticed that the stipulation is that the pillars are to be left in the mine to support the roof. Nothing is said as to support of the surface. It is apparent that support of the roof would be required in order to protect mining operations, and it is also clear that after the coal is exhausted such protection will no longer be necessary. As the pillars contained a large proportion of the coal, to sustain appellants' contention would be to deny to the lessee his right to take out all of the coal, which is so clearly set forth in the lease. As the referee well says: "All means the whole, not merely a part. All the coal does not mean such proportion only as could be won on

first mining.   It would be unreasonable to suppose that the parties had in mind that only the coal which could be mined from the solid was intended to pass, in view of the last clause quoted from the lease, viz, that when all the coal should have been mined the lessee may remove all breakers and other improvements." Certain contingencies were provided for in the lease such as failure to pay royalties or excessive cost of mining, which might result in bringing about its termination before the coal was all exhausted.   Naturally in such event the lessor desired, that the pillars should be left standing, and the mine should be left in good condition for future operation.   But when in the regular course of business the other available coal is all removed, there will then be no reason for leaving the pillars.   On the contrary, it will be to the interest of both parties to have them removed, and the coal contained in them utilized.   We agree, therefore, that the referee and the court below placed a fair and reasonable construction on the clause, requiring the pillars to be left, when they held that it was not intended to abrogate the essential provisions of the lease, which contemplated that the lessee should mine and remove all the coal, but that it was intended to relate only to the conditions prevailing during the progress of mining operations.

A strict construction of the lease against the grantor is justified by the familiar rule that where the intention of the parties to a grant is not clear, that construction most favorable to the grantee will be adopted.   Thus in Klaer v. Ridgway, 86 Pa. 529, it was said (p. 534) : "It is a familiar rule that a deed or grant must be construed most strongly against the grantor.   This applies with especial force to a reservation or restriction in a deed whereby there is a withholding of something from the grant."   This language was quoted with approval in Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614 (624).   The rule of strict construction against a grantor

was applied in a mining lease in Grubb v. Grubb, 101 Pa. 11.

The case of Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co., 219 Pa. 124, has been cited here by counsel for both parties. We do not see that it has any direct application to the case at bar. No right of surface support was there involved, and the question decided was the right of the lessee to the coal under a certain size. In the present case no such question arises, as it is expressly provided in the lease that all the small coal shall belong to the lessee if removed from the premises during the term of the lease. There can be no doubt but that the lease here under construction amounted to a sale of all the coal in the mine. The referee has found as a fact "that in mining out the pillars (which had been removed prior to the suit) the operators exercised reasonable care and skill, and in conducting their mining operations they were at no time guilty of wilful misbehavior or gross negligence," and that the falling of the roof, and such subsidences of the surface as had occurred "did not result from any wilful misbehavior or gross negligence on the part of the operators, but was the result of the mining out of the pillars in the ordinary way and with reasonable care and skill." No exceptions were taken to these findings of fact. Authority for the proposition that a stipulation for careful and skilful mining relates only to the manner of working the coal and does not impose upon the operating company the duty of supporting the surface, is to be found in Youghiogheny River Coal Co. v. Allegheny Nat. Bank, 211 Pa. 319, and in Kellert v. Rochester & Pittsburgh Coal and Iron Co., 226 Pa. 27. Under the rule established in these cases, and upon the referee's findings of fact, it is clear that the removal of the pillars by defendants in the present case cannot be held to be either misbehavior or negligence.

The assignments of error are overruled, the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellants.