# Advance Industrial Supply Co. *v.* Eagle Metallic Copper Co. et al., Appellants.

*Mines and mining—Quarry lease—Extent of grant—Possession —Minimum royalty—Sale of minerals—Construction of written instrument—Exceptions—Expressio unius est exclusio alterius— Présumption—Evidence.*

1. In cases where a real doubt exists as to the extent of a grant, the doubt is to be resolved against the grantor, especially if the instrument was drawn by or for him.

2. A lessee is presumptively entitled to exclusive possession of the property described in the lease.

3. An unlimited right to take minerals during a fixed term, coupled with a duty to do so continuously or to pay a minimum royalty, presumptively is a sale of the minerals.

4. In sustaining a writing, words must be given their plain meaning, unless something appears to limit the generality of the language used.

5. The expression of certain exceptions ordinarily excludes the implication of others.

Argued March 1, 1920. Appeal, No. 3, Jan. T., 1920, by defendants, from decree of C. P. Adams Co., Nov. T., 1917, No. 1, on bill in equity in case of Advance Industrial Supply Co., Inc., v. Eagle Metallic Copper Co., United Milling & Smelting Copper Co., Hamilton W. Shafer and the Blue Mountain Stone Co. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Decree modified and affirmed.

Bill in equity for an injunction to restrain the mining and smelting of green stone from a quarry property. Before McPHERSON, P. J.

The facts are stated in the opinion of the Supreme Court.

The court below entered a decree awarding an injunction. Defendants appealed.

*Error assigned* was the decree of the court, quoting it.

*Wm. Hersh* and *John H. Dahlke,* with them *Frank L. Stoner* and *Harry Brindle,* for appellants.—The undisputed facts in this case, and the express terms of the instrument itself, bring it within the doctrine recognized in all the decisions that when the grant does not convey all the coal or mineral, or provide for the payment of all, and the rights granted therein are limited, this does not constitute a sale of the product nor give to the grantee an exclusive right to the same: Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Jennings Bros. & Co. v. Beale, 158 Pa. 283; Funk v. Haldeman, 53 Pa. 229; Clement v. Youngman, 40 Pa. 341; Grubb v. Grubb, 74 Pa. 25; Denniston v. Haddock, 200 Pa. 426; Reynolds v. Smith, 70 Pa. Superior Ct. 194; McMillin v. Titus, 222 Pa. 500; Girard Trust Co. v. D. & H. Co., 246 Pa.

161; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241.

*John D. Keith,* for appellee, cited: Lehigh, etc., R. R. v. B. & P. Ry., 228 Pa. 350; Caldwell v. Fulton, 31 Pa. 475; Miles v. N. Y., etc., Coal Co., 250 Pa. 147; Lehigh C. & N. Co. v. Harlon, 27 Pa. 429; Timlin v. Brown, 158 Pa. 606; Plummer v. Hillside Coal, etc., Co., 160 Pa. 483.

OPINION BY MR. JUSTICE SIMPSON, March 22, 1920:

On July 20, 1914, plaintiff, a corporation engaged in quarrying, milling and marketing green stone for commercial purposes, entered into an agreement with two of the defendants, the Eagle Metallic Copper Company and the United Milling & Smelting Copper Company (which latter was the owner of all the capital stock of the former), by which plaintiff was given rights in certain lands of the first mentioned company. These lands are not specifically described in the agreement, but, from evidence produced by defendants themselves, the court below found as a fact: "It seems clear that these two tracts [of 52 acres and 125 acres respectively, not necessary to be here more fully described] are the lands which were the subject-matter of the lease." This finding was not excepted to, and it must now be deemed conclusive of the fact.

By virtue of the agreement plaintiff entered into possession, erected a plant and other buildings, later erected two other plants, opened up several quarries, and obtained and milled green stone from both of said tracts. Still later, on September 7, 1917, the United Milling & Smelting Copper Company, with the approval of the Eagle Metallic Copper Company, entered into a written agreement with one E. Howell Mutchler, giving to him an exclusive right, for fifty years, to quarry and remove green stone from the tract of one hundred and twenty-five acres; and he, with the approval of the defendant companies, assigned all his rights thereunder to the

third defendant, Hamilton W. Shafer.   The latter pre-
pared to quarry and remove green stone from the last
mentioned tract, whereupon plaintiff filed the present
bill, averring its exclusive right to the green stone in
both of the tracts, and praying an injunction and other
consonant relief.   The court below granted the injunc-
tion and defendants now appeal.

The assignments of error are numerous; but since in
the court below, and in their paper-book here, appellants
state that "the construction of the agreement [of July
20, 1914, first above referred to] is the one question in-
volved in this litigation"; and since it was also found as
a fact, not objected to, that nothing was inserted in or
omitted therefrom by fraud, accident or mistake, we will
from this agreement alone determine the rights of the
parties.

After reciting the ownership of the property by the
Eagle Metallic Copper Company, one of the parties of
the first part, and the desire of plaintiff, the party of the
second part, "to purchase stone located on the property
......and to have the right to mine, quarry, and crush
said stone and [its willingness] to lease the property
......for the above purpose," the agreement declares
that the "party of the first part does hereby lease unto
the party of the second part......so much of the land
......located......below Gladhill's Station on the
Western Maryland Railroad as may be necessary for the
erection and proper maintenance of a crushing and mill-
ing plant, said land not to exceed ten acres in area, and
the said party of the first part does further give unto the
said party of the second part the right to quarry what is
known as the 'green rock,' located at the head of the old
tunnel, known as the 'tapeworm railroad tunnel,' and
to obtain the said green rock from any other part of the
property of the party of the first part, to be used in the
plant erected on the property hereby leased, or in any
other plant which said party of the second part may
have now or cause to be erected during the existence of

this lease." It further provides for certain payments to be made "for all material taken exclusively from the property of the party of the first part and milled in any of the plants of the party of the second part," and for a certain other sum to be paid for material taken from this and the adjoining property "until the said rock can be taken exclusively from the property of the party of the first part at this point." It also provides that "said party of the second part shall continue its operations in a proper manner and continuously as far as practical, and after the first six months' operation that approximately eight or more carloads of material per week will be shipped,......that all mineral-bearing rock of a commercial value which may be quarried or discovered in the quarrying of the green stone shall be and remain the property of the party of the first part without any expense attached thereto for the quarrying or handling of the same......that the operation herein provided shall be limited to a reasonable space consistent with the practical operations of the plant, and that all the material or refuse which the party of the second part does not ship shall be and remain the property of the party of the first part"; and that "this lease shall begin on the 20th day of July in the year 1914, and end on the 19th day of July in the year 1924." It further stipulates that "this lease shall immediately terminate" if operations are suspended for one year, that each party "agrees to fulfill the terms and conditions of this lease," and authorizes one of its officers to "acknowledge this lease," and he did "acknowledge the foregoing lease......and desired the same to be recorded as such."

It cannot be said the true construction of this agreement is entirely free from doubt, but since it was drawn by counsel for the defendant companies, and is their deed, all real doubts as to the extent of the grant must be resolved against them: Funk v. Haldeman, 53 Pa. 229; Grubb v. Grubb, 101 Pa. 11; Algonquin Coal Co.

v. Northern Coal and Iron Co., 162 Pa. 114; Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614; Miles v. New York, Susquehanna & Western Coal Co., 250 Pa. 147; 24 Cyc. 915. Thus tested we are satisfied the decision of the court below was correct.

If the agreement is to be construed a lease, which it repeatedly says it is, there is a presumption of a right of exclusive possession in the lessee (24 Cyc. 924, 1055; 16 Ruling Case Law 620) for it is the grant of an interest in the land and is not a mere license (Harlan v. Lehigh Coal & Navigation Company, 35 Pa. 287); and, there being nothing to rebut this presumption, the decree below would be right. If it is to be treated, in accordance with the recital, as an agreement of purchase of the green stone, this also would require an affirmance of the decree. The presence of the minimum royalty clause, with a right to take as much more as desired, coupled with the requirement of a continuous operation, bears out the contention that the agreement constituted a sale of the stone (Timlin v. Brown, 158 Pa. 606; Plummer v. Hillside Coal & Iron Co., 160 Pa. 483); and the fact that the right to take is limited to a term of years, does not make it any the less a sale: Funk v. Haldeman, 53 Pa. 229; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 614; Hosack v. Crill, 204 Pa. 97.

It is not necessary, however, to rest the case upon either of these grounds, for the same result will be reached from the balance of the agreement, if we still keep in mind the above-stated principles. It gives to plaintiff "the right......to obtain the said green rock from any other part of the property" without restriction as to location or quantity of stone to be taken; and this bill only seeks to enforce that right. It is true the prior language giving the right to quarry "green rock located at the head of the old tunnel" contrasted with the expression previously quoted, would seem to suggest a possibility that the latter contemplated some other method of obtaining the green stone than by quarrying it;

but if we so decide the present question would not be affected thereby. There is nothing here to limit the generality of the words in regard to obtaining the green stone from the other part of the property, and hence we must give to them their plain meaning. Appellants now concede this, but claim the right is not exclusive so far as the rest of the property is concerned, though it is as to the "green rock located at the head of the old tunnel" where quarrying is specifically allowed. No reason is stated, and certainly the agreement suggests none, why one should be exclusive and the other not. Had it been desired to limit plaintiff's right to one in common, it should have been so said, and from the fact it was not we conclude, under the rules of construction above stated, that it was not so intended. Moreover, the purpose of each clause was to enable plaintiff to get the green stone, and a right in common with others would injuriously affect the facility with which it could be obtained from either place. When the agreement was made the parties were alike interested in there being an exclusive grant as to both places, plaintiff that it might quarry and mill the stone without interference, and the defendant companies that they might obtain from the land as large a return as possible. These facts emphasize the conclusion that an exclusive right was intended to be granted.

The fact that other plants were to be erected and no location was provided therefor, in itself enforces the thought that the exclusive grant was not limited to the green stone near the head of the tunnel; and this conclusion is also rendered probable by the further fact that the lease reserved to the lessor all other "mineral bearing rock of commercial value," and the unshipped "material or refuse" from the mills, which, under the maxim expressio unius est exclusio alterius, "is significant of an intention to exclude" the reservation of any of the green stone on the property: Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387, 395.

Appellants urge, however, that this conclusion is antagonized by the clause requiring that "the operations herein provided shall be limited to a reasonable space consistent with the practical operations of the plant." We do not think so. When the word "plant" is used in the agreement it always refers to the milling plant to be erected on the ten-acre tract, and not to the other plants which may be constructed elsewhere, or to the quarries anywhere. Hence the words above quoted naturally, if not inevitably, refer only to the milling of the stone at this plant. Moreover they cannot possibly be held to limit the express right given to construct other plants, without restriction as to number or location; and hence, if they apply also to the other plants, they can only mean that wherever a plant is located its operations shall be limited to a reasonable space consistent with the practical operation of the particular plant; and since, as stated, plants may be erected anywhere on the two tracts, this provision does not circumscribe plaintiff's exclusive right of possession thereof during the continuance of the lease.

It was also urged that the parties had themselves construed the agreement in the way claimed by appellants, and hence this construction should be followed by the courts: Gillespie v. Iseman, 210 Pa. 1; McMillan v. Titus, 222 Pa. 500; Bubb v. Parker & Edwards Oil Co., 252 Pa. 26. There was, however, no such construction. The fact that plaintiff did not at once quarry all over the tract, does not operate as an interpretation of the writing, especially as the clause relating to payment contemplates that quarrying shall at first be done at but one place. With at least as much force it may be said the construction of the parties was antagonistic to appellants, because they made no attempt to take green stone until after plaintiff located quarries and plants elsewhere than at or near the specified ten acres. By neither of these delays, however, was there any interpretation of the agreement.

Appellants' contention has been a shifting one. By their answer they claim the grant to plaintiff was for all purposes limited to the ten-acre tract, and upon this theory they gave to Mutchler, during a period of fifty years, an exclusive right to remove all green stone on the one hundred and twenty-five-acre tract. Later they admitted plaintiff's rights, in common with defendants', extended also to but not beyond the "green rock located at the head of the old tunnel." This would result in some conflict, perhaps not extensive, with the exclusive grant to Mutchler. They now assert plaintiff has an exclusive right in the ten acres and the land at the head of the tunnel, but a license only to take from the rest of the property, including that attempted to be given exclusively to Mutchler; which license, they say, must be exercised in common with any and all others to whom rights to take may be given. If this were so an indefinite number of other such grants might be made, these grantees might locate their plants on all the other profitable sites, in such a way as to practically exclude plaintiff from availing itself of the right to "obtain said green rock......from any other part of the property." We cannot believe it possible this was intended, and the above considerations satisfy us it was not.

Neither in the paper-book nor in the oral arguments made for appellants, was the form or scope of the final decree objected to, but it is assigned as error, and an inspection thereof shows it is not limited as to time. It should not extend beyond the period fixed by the lease, and hence it is modified so as to read as follows: "And now, January 17, 1919, this cause having come on to be heard, upon consideration thereof, it is adjudged, ordered and decreed that the defendants, and each and every of them, except the Blue Mountain Stone Company, and the lessees and assigns of each and every of them and the employees and agents of any and all of them, be and they hereby are enjoined until July 20, 1924,—if the agreement of July 20, 1914, between plaintiff and the

Eagle Metallic Copper Company and the United Milling & Smelting Copper Company so long remains in force,—from entering upon the land of the Eagle Metallic Copper Company, situate in Hamiltonban Township, Adams County, Penna., located near Gladhill Station on the branch of the Western Maryland Railroad leading from Highfield to Gettysburg, containing one hundred and seventy-seven (177) acres, more or less, and more particularly described in plaintiff's Exhibit No. 19 in this case, for the purpose of erecting any building or other structure or equipment to be used in quarrying, obtaining or removing from the said land any of the green rock thereon, and from quarrying, obtaining or removing the said green rock thereon, and from entering on or occupying said lands leased unto the plaintiff, in such manner or in such places as would interfere with, or obstruct, or impede, or delay the plaintiff in the opening of quarries, and quarrying for or obtaining the green rock thereon, in pursuance of the rights granted to the plaintiff by said agreement, or in the exercise by the plaintiff of any of its rights granted under said agreement. That the defendants, against whom this decree is entered, shall pay the costs of this proceeding."

The decree of the court below as thus modified is affirmed and the appeal is dismissed at the costs of appellants.