## Hennecamp v. Valley Smokeless Coal Company.

*Mines and mining—Coal lease—Conveyance of coal from adjoining lands— Construction of lease—Extrinsic evidence.*

1. The rule that where the intention of the parties to a grant is not clear, that construction most favorable to the grantee will be adopted, applies to a mining lease of coal.

2. Where a lease conveys "all the minerals underlying" a tract of land, and mining rights, with full release of damages "caused by the opening and working said mines in the proper manner, . . . together with the right to convey coal and other minerals (provided, however, that all surface occupied or so used or damaged shall be paid for at reasonable prices or damages therefor, but not to exceed $80 per acre . . .) through and over said lands from adjoining lands," the lessee must pay the lessor for the conveyance of coal mined in adjoining lands through the lands specified in the lease, but is not liable for injury to the surface caused by mining in a proper manner.

3. Where there is no ambiguity in a mining lease, extrinsic evidence will not be admitted to aid in its construction.

Motion by defendant for judgment *n. o. v.* C. P. Cambria Co., Dec. T., 1918, No. 502.

*Graham & Yost*, for plaintiff.

*Edward Hopkinson, Jr.*, and *Charles S. Evans*, for defendant.

REED, P. J., Orphans' Court, specially presiding, Sept. 5, 1921.—The plaintiff above named brought an action in trespass against the defendant company, to the above number and term, for injuries which he alleged have been caused to his land in 1913 and 1914 by reason of the defendant company's failure to properly support the surface. In addition to the actual damage to the land claimed by the plaintiff, he also sued for punitive and exemplary damages on the ground that the defendant company's actions had been wantonly and wilfully done in disregard of the rights of the plaintiff, and that the mining under his property had been improperly, unlawfully and negligently done. However, at the time of the trial, there was no evidence

offered to sustain the latter allegations, and, therefore, we need not consider them in this opinion.

On May 29, 1899, Emma J. Kauffman and husband conveyed, by deed of general warranty, to Daniel Cauffiel, "all the minerals underlying" the tract of land which is now owned by the plaintiff, "together with the right of ingress and egress into, upon and over the said lands, for the purpose of examining and searching for, and of mining, manufacturing and preparing the said minerals for market, and taking, storing, removing and transporting the same, and for these purposes to build roads and drains upon or under the surface of said lands, and to locate and erect such buildings or other structures, with the necessary curtilage, as may be necessary and proper for the convenient use and working of the mines or works, with the right to deposit the dirt or waste of the said mines or works upon the surface convenient thereto. And the said party of the first part does hereby release all and every claim or claims for damage to the said land caused by opening or working of said mines in the proper manner, together with the right to convey coal and other minerals (provided, however, that all surface occupied or so used or damaged shall be paid for at reasonable prices or damages therefor, but not to exceed $80 per acre, and the replacing or full cost of damages to improvements, if any, thereon) through and over said lands from adjoining lands."

The defendant took title to the above described coal and mining rights by deed from Daniel Cauffiel, the above named grantee, and by virtue of the covenants and conditions in its deed mined out the greater part of the coal from under this land, and the plaintiff alleges that, in mining and removing said coal, the defendant failed to properly support the superincumbent strata, and by reason of this failure the surface was damaged and he suffered a loss of the springs which supplied his farm with water.

At the time of the trial, counsel for the defendant urged the court to direct a compulsory non-suit for the reason that there had been a full and complete release of all damages to the surface; for the reason that, at the time of the severance of the surface and the minerals, the grantor gave a deed which contained a full and complete release of all and every claim or claims for damages to the said land caused by opening or working said mines in the proper manner, and if it were not for the fact that the deed also contained the hereinafter quoted clause, there could not be any contention in regard to the rights of the parties in this issue. After the release in the deed of all and every claim or claims for damages to said land, caused by opening and working said mines in the proper manner, we find the following language: "Together with the right to convey coal and other minerals (provided, however, that all surface occupied or so used or damaged shall be paid for at reasonable prices or damages therefor, but not to exceed $80 per acre, and the replacing of full cost of damages to improvements, if any, thereon) through and over said lands from adjoining lands."

The question for us to determine is to what part of the grant does the above quoted clause refer. Does this clause in the deed refer to any damage done the surface by reason of the mining and removal of the coal from under this particular piece of land in a proper manner, or does it simply refer to surface that will be occupied, used or damaged by conveying coal and other minerals through and over said lands from adjoining lands. If the former view is adopted, then, under the testimony, the defendant is entitled to judgment *n. o. v.*, for the reason that there was no evidence submitted at the time of the trial that the coal had been mined out from under this property in an

1 D. & C.

improper manner. The deed that conveyed the coal and other minerals under this property gave the most comprehensive rights and privileges for use of the surface for the working of the mines and removal of the coal, with the right to deposit dirt or waste from the mines upon the surface. This grant was followed by the release. Up until this time in the deed, all its provisions, conditions and privileges were confined to the mining and removal of coal from under this particular tract of land; but the grantors still being the owner of the surface of the land, the grantee did not have the right to convey coal and other minerals through and under this land from adjoining lands, and unless this right was granted to the grantee, in case he owned the coal or minerals in, under or upon adjoining lands which he wished to haul through or over the surface of the grantor's land, it would have been necessary for him to pay a wheelage for that privilege, and in order to get the right or permission to haul coal through and under the grantor's land, grantee agreed that this should be done upon certain conditions, and that was, that in case the grantee, or his heirs or assigns, occupied, used or damaged any of this surface in mining and removing the coal from adjoining lands, then for all such surface used or damaged the owner of the coal was to pay the owner of the surface a reasonable price or damage therefor, not exceeding $80 per acre.

In considering this deed, it is incumbent upon us to consider and give effect to all of its terms and provisions so as to harmonize, if possible, all of them, so as to make the entire deed consistent, and it would not seem to be consistent to say that the grantor in a deed of coal and mining rights would grant a general release of damages to his lands, caused by opening or working the mines in a proper manner, and then, in a following clause, attempt to protect his surface or himself from damage by charging a reasonable price for the damages which he had already released, and if we were to adopt the view of the counsel for the plaintiff, we would have the above anomaly or inconsistency in the grant. If we construe the deed and the grant of the mining rights and privileges to mean that the grantor gave a general release of all damages that might be done to the surface of the land under which he sold the coal by reason of the mining and removal of the same, and that he protected himself for the injuries that his lands would receive by reason of the mining and removal of the coal from adjoining lands, we have a deed that is not only consistent, but which is, to our mind, most reasonable. And, again, if the language is such in the deed that either view could be reasonably adopted, then, under the general rule that a deed or lease "is to be taken most strongly against the vendor or lessor," the court must conclude that the clause within parenthesis applied only to damages which would be done this land by reason of the mining and removal of coal through and over said lands from adjoining lands.

In the case of Miles v. N. Y. S. & W. Coal Co., 250 Pa. 147, 153, the Supreme Court said: "A strict construction of the lease against the grantor is justified by the familiar rule that where the intention of the parties to a grant is not clear, that construction most favorable to the grantee will be adopted. Thus, in Klaer v. Ridgway, 86 Pa. 529, it was said: 'It is a familiar rule that a deed or grant must be construed most strongly against the grantor. This applies with especial force to a reservation or a restriction in a deed whereby there is a withholding of something from the grant. This language was quoted with approval in Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614. The rule of strict construction against a grantor was applied in a mining lease in Grubb v. Grubb, 101 Pa. 11.' "

Hennecamp v. Valley Smokeless Coal Company.

We were much impressed with the able argument of the counsel for the plaintiff at the time of the trial as to his view or construction of the language used in this grant, and he has supplemented that with an able brief, wherein he has very extensively analyzed this language and given his reasons for the position which he has taken; but, after a careful consideration of the entire deed, we have been compelled to come to the conclusion that the plaintiff is not entitled to recover on account of this general release of damages.

The plaintiff offered to call witnesses for the purpose of enlightening the court as to what the parties meant by the language they used at the time the deed was written, and we felt at that time, and are still of the opinion, that there is no such ambiguity in this deed as would permit us to hear evidence for the purpose of placing a construction on the language contained therein. Having come to the above conclusion, we do not deem it necessary to enlarge on and further discuss the reasons filed for a new trial.

And now, Sept. 5, 1921, for the reasons above stated, the motion of defendant for judgment n. o. v. is sustained, and judgment is directed to be entered for the defendant, at the cost of the plaintiff.

From H. W. Storey, Jr., Johnstown, Pa.