## Murray v. Mineral Spring Coal Company et al.

*A. P. Conniff* and *Francis Murray*, for plaintiff.

*R. H. Harris, J. P. Harris, J. H. Bigelow*, and *P. F. O'Neill*, for defendants.

VALENTINE, J., December 27, 1934.—Plaintiff seeks a continuance of a preliminary injunction restraining the defendants from entering upon and excavating the surface of a tract of land situate in the outskirts of the City of Wilkes-Barre, and containing 218 acres.

On August 9, 1900, the Pennsylvania Institution for the Instruction of the Blind and the Contributors to the Pennsylvania Hospital leased to the Mineral Spring Coal Company, predecessor in title of the present operating defendant, "all the coal lying and being in, under and upon" a tract of land comprising 322 acres, of which surface now owned by the plaintiff is a part, "To have and to hold the said coal in, under and upon the said piece or parcel of land . . . together with the sole and exclusive right to mine and remove the same. . . . Until all and singular the merchantable coal in, under and upon the said described premises shall have been mined out and removed." The lessee covenanted to pay the lessors a minimum annual cash rental designated in the lease "until . . . such minimum shall be diminished or wholly ended by the exhaustion of the merchantable coal in the process of mining, or by such coal being paid for before the actual mining." The lessee further covenanted "to mine all the merchantable coal upon the demised premises in a skillful and careful manner and that no unnecessary waste of coal shall be caused or permitted in the mining, preparing and removing of the same."

The lessee further covenanted "to work the said coal

diligently and in a workmanlike manner with as little injury to the surface as reasonably can be."

The plaintiff acquired title to the surface of 218 acres subject to the rights of the lessee and its successors in title under said lease.

In addition to the provisions heretofore quoted, surface rights of the lessee were provided for as follows: "that it (lessee) will not deposit the culm or dirt incident to the mining of coal hereby leased on the surface of the tract herein described in such a manner as to interfere with any water courses or occasion damage to any adjacent properties," and that the lessee should have the right to "mine, remove and prepare for market coal from other lands now or hereafter owned, leased or otherwise controlled by the said lessee, through, over and upon the lands hereby leased and the passage ways and mining improvements upon the demised premises"; also, "That the lessee shall have the right to mine and remove and prepare for market the coal from the demised premises through, over and upon any other lands and the passage ways and mining improvements thereon owned, leased or. otherwise controlled by it."

. Defendant's counsel have ably argued that by the provisions of the lease the surface rights of the tract referred to in the lease were subordinated to the mining operations.

The lease is to be construed most strongly against the lessors: Miles v. The New York, Susquehanna & Western Coal Co., 250 Pa. 147; and, if possible, in such a way as to give effect to all its terms and conditions: Heningkamp v. Valley Smokeless Coal Co., 274 Pa. 186. The lease provided for the use of portions of the surface. It gives no express right to destroy the surface, nor do we think that such a right is to be implied from the language of the grant.

In several well considered English authorities involving somewhat similar situations conclusions have been

reached that owners of the minerals were not entitled to remove them where such removal involved injury to or destruction of the surface.

In Harris v. Ryding, 5 Mees. & W. 60, the grant under consideration was of " 'all and all manner of coals, seams and veins of coal, iron ore, and all other mines, minerals, and metals which then were, or at any time, and from time to time thereafter, should be discovered in or upon the said premises, etc., with free liberty of ingress, egress, and regress, to come into and upon the premises, to dig, delve, search for, and get etc. the said mines and every part thereof, and to sell and dispose of, take, and convey away the same, at their free will and pleasure; and also to sink shafts, etc., for the raising up works, carrying away and disposing of the same or any part thereof, making a fair compensation to P. [claimant] for the damage to be done to the surface of the premises, and the pasture and crops growing thereon.' "

In Roberts et al. v. Haines, 6 El. & Bl. 643, the owner of the mines was authorized "to search for, dig, get, and raise, any coal and ironstone lying and being in or under the commons and waste lands, and to erect any work or works for that purpose, and to dig and take earth for making and to make bricks for any such work or works, and to carry away and dispose of such coal and ironstone to and for his and their own use".

In Smart et al. v. Morton, 5 El. & Bl. 30, the language was " 'with free leave and liberty to sink, work and win the same in any part of the said premises, and to drive drift or drifts, make watergate or watergates, or use any other way or ways, for the better and more commodious working and winning the same in the said hereby granted or intended to be granted premises, or any part thereof' ".

In Noonan v. Pardee, 200 Pa. 474, at page 482, it is said: "Where there has been a horizontal division of the

land, the owner of the subjacent estate, coal or other mineral, owes to the superincumbent owner, a right of support. This is an absolute right arising out of the ownership of the surface. Good or bad mining in no way affects the responsibility; what the surface owner has a right to demand is, sufficient support, even, if to that end, it be necessary to leave every pound of coal untouched under his land"; and in Youghiogheny River Coal Co. v. Allegheny National Bank, 211 Pa. 319, at page 323, the Court declared: "When there has been a severance of ownership of the surface and the coal, the owners of the respective estates hold them as estates in land and, of course, the title and rights of each depend upon his conveyance. If the owner of the whole fee conveys the coal in the land in general terms, as in this case, retaining the residue of the tract, the purchaser acquires the coal with the right to mine and remove it, provided he does so without injury to the superincumbent estate. His estate in the coal, like that of the owner of the surface, is governed by the maxim sic utere tuo ut alienum non lædas. The owner of the surface is entitled to absolute support of his land, not as an easement or right depending on a supposed grant, but as a proprietary right at common law: Carlin v. Chappel, 101 Pa. 348; 2 Snyder on Mines, sec. 1020. Support for the superincumbent estate is of natural right and is part of the estate reserved to the owner of the surface: Coleman v. Chadwick, 80 Pa. 81."

In Rowbotham et al. v. Wilson, 8 H. L. Cas. 348, the right to destroy the surface was sustained where in accordance with the provisions of an act of Parliament commissioners appointed to allot the lands, surface and minerals provided in their award that the mineral lands "should be lawfully held and enjoyed by the allottees without molestation, and without any mine owner being subject to any action for damages on account of work-

ing and getting the mines, or by reason that the lands might be 'rendered uneven and less commodious to the occupiers thereof, or by sinking in hollows, and being otherwise defaced and injured where such mines shall be worked' ".

In the later case of Duke of Buccleuch v. Wakefield, 4 L. R. H. L. 377, 408, the Inclosure Act passed upon empowered the owner of the mines "to enter into and upon the lands directed to be divided and inclosed, to search, bore, and dig for mines and minerals, and to sink shafts and open veins or quarries, and to deposit the minerals on the land, and continue the same as long as he shall think proper, and to carry the same away over the lands, and for that purpose to open gaps in the fences, and to make and continue horse and carriage and footroads over the lands when and so often and so long as he shall think proper, and divert and turn any rivulet, brooks, or streams of water over the lands for better working the mines and minerals, and to sink and drive pits, quarries, levels, soughs, saflights, tunnels, and other necessary works within or upon the said lands, and to erect habitations for workmen and others employed about the works in smelting and refining or manufacturing the minerals, and also to do all further and other acts and things whatever for getting the said mines and minerals and carrying on the works thereof, and disposing of and carrying away the same, in as full and ample a manner to all intents and purposes as could or might have been done if the said lands had remained open and uninclosed, or this Act had not been passed, yet nevertheless making reasonable compensation for damages done by said works to the person sustaining such damage." The court concluded (page 411): "by the express words of an Act of Parliament, which is at least equivalent to a contract, power is given to the lord to carry on the works of the mines to an extent which may reach to the utter destruction of the

land above, making compensation for the damage done to the owner of the surface. The purchaser under the Inclosure Act must be taken to have known its provisions, and that he would be subject entirely to the will of the mine owner, and he must have regulated the offer of his purchase-money accordingly. Nor, upon consideration, is there any such hardship upon him as there would at first sight appear to be: for even if the whole surface is destroyed, he gets full compensation for it, and the money is a substitute for the land of which he is deprived."

These authorities are in line with the decisions of our own State, that a waiver of the right of surface support may be implied from the grant of a release of damage occasioned by mining, or from other language showing such to be the intention of the parties: Gordon v. Delaware, Lackawanna & Western R. R. Co., 253 Pa. 110; Hines, etc., v. Union Connellsville Coke Co., 271 Pa. 219.

In Bell v. Wilson, 1 L. R. Ch. App. 303, it was held that under a reservation of all " 'mines or seams of coal, and other mines, metals, or minerals', under the land granted, with liberty to dig, bore, work, lead, and carry away the same, and to make pits, etc." the owner of the minerals could only remove free stone by underground mining and not by working in an open quarry.

In Hext v. Gill, 7 L. R. Ch. App. 699, the deed contained the following exception and reservation: " 'Excepting nevertheless and always reserving unto his said Royal Highness the Prince of *Wales*, his heirs and successors, Dukes of *Cornwall*, all mines and minerals within and under the said several and respective premises, or any part thereof, together with full and free liberty of ingress, egress, and regress to and for his said Royal Highness, his heirs and successors, and his and their officers,

agents, and workmen, and to and for the lessee or lessees of his said Royal Highness, his heirs and successors, and the agents and workmen of such lessee and lessees, into and out of the said several premises and every part thereof, with or without horses, carts, and carriages, to dig and search for, and to take, use, and work the said excepted mines and minerals.' " It was held that this language gave to the owner of the minerals no right to destroy the surface in order to remove the minerals, Mellish, L. J., saying, at page 718: "When an owner of both surface and minerals sells the surface and reserves the minerals, with power to get them, he ought, if he intends to have the power of destroying the surface in getting them, to frame his power in such language that the Court may be able to say that such was clearly the intention of the parties."

In Valley Smokeless Coal Co. v. Manufacturers' Water Co., 295 Pa. 40, at page 45, Justice Sadler speaking for our Supreme Court said: "It is the duty of the owner of minerals to furnish 'surface' support to the one who has the right to the land above (Jones v. Wagner, 66 Pa. 429; Horner v. Watson, 79 Pa. 242; Lenox Coal Co. v. Duncan-Spangler Coal Co., 265 Pa. 572; Woods v. Pittsburgh Coal Co., 230 Pa. 197; Charnetski v. Miners Mills Coal Mining Co., 270 Pa. 459), unless this legal obligation has been waived by the one entitled thereto. . . .

"If a waiver of this common law right is insisted on, the one so asserting has the burden of proving it, but that this was the understanding may be implied from the grant of a release of all damages which may be occasioned by mining, or otherwise: Miles v. Penna. Coal Co., 214 Pa. 544; Mine Hill & S. H. R. R. Co. v. Lippincott, 86 Pa. 468; Hines v. Union Connellsville Coke Co., 271 Pa. 219; Gordon v. D., L. & W. R. R. Co. (No. 1), 253 Pa. 110; Williams v. Hay, 120 Pa. 485."

If the parties had intended that there should be a

waiver of the right of surface support it would have been a very simple thing to so state, but they did not so state, instead they provided that the lessee should work the coal "with as little injury to the surface as 'reasonably can be.'" Similar language was construed by our Supreme Court in Williams v. Hay, 120 Pa. 485, wherein it was said, page 496: "It was urged that this language implies that some damage would necessarily ensue to the surface in mining the coal. But an absolute right to surface support is not to be taken away by a mere implication from language which does not necessarily import such a result. The owner of the coal had certain surface rights which were indispensable to the carrying on of his mining operations, such as the right to go upon the surface to make explorations for the minerals beneath, and bore holes, sink shafts, drifts, etc., and the right to make roads and erect structures for taking out the coal. Hence it is a fair construction of the deed to say that in doing these things as little damage was to be done to the surface as possible. The provision referred to covers these matters, and as we have a subject to which it directly applies, it would be a strained interpretation of the deed to hold that it was intended to take away the right of surface support."

The grant under consideration is not of such character as to indicate that the lessors unmistakably intended to extinguish the right of surface support, Gordon v. Delaware, Lackawanna & Western R. R. Co., supra, which is necessary in order that the conclusion may be reached that the right to the support of the surface has been waived by implication.

The testimony established that the stripping operation was being conducted by A. E. Dick Construction Company at the direction of the Monarch Anthracite Mining Company by virtue of an arrangement made by the latter company with the West End Coal Company.

Injunction heretofore granted is dissolved as to the defendants, Mineral Spring Coal Company and the Lehigh Valley Coal Company and is continued as to the defendants, West End Coal Company, Monarch Anthracite Mining Company and the A. E. Dick Construction Company.